**NATIONAL ENGINEERING AND CONTRACTING COMPANY, etc.,**

**Plaintiff, v. CLEVELAND (City) et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 697553.   Decided August 12, 1957.

304

Morley, Stickle, Keeley & Murphy, John K. Sullivan, Cleveland, for plaintiff.

Wm. T. McKnight, Cleveland, for defendants.

## OPINION

By J. J. P. CORRIGAN, J.

The plaintiff, National Engineering and Contracting Company, an Ohio corporation, as a taxpayer located in the City of Cleveland filed a petition in this court on June 11, 1957, in behalf of the city and all taxpayers thereof, against the City of Cleveland, Louis L. Drasler, Director of Public Service, Edward C. Knuth, Director of Finance and Ralph W. Muntz, Commissioner of Accounts, praying that they be enjoined from executing any contract with the Hunkin-Conkey Construction Company for the construction of the so-called Ridge Road Incinerator Plant and for such other equitable relief as plaintiff may be entitled to in the interests of justice and equity. Part of the prayer in the petition also requested a declaratory judgment but that request was abandoned by counsel for plaintiff at the outset of the trial.

Plaintiff's petition in part sets out that it is the owner of real and personal property in Cleveland and is a taxpayer of said city; that plaintiff made a demand upon Ralph S. Locher, Law Director of Cleveland, to bring this action and he refused.

Petition further alleges that in accordance with the Charter of City of Cleveland the Cleveland City Council passed the following ordinance: "Ord. No. 538-56

"By Mayor Celebrezze.

"An emergency ordinance determining the method of making the public improvement of the construction of incinerator, complete in place, to be located in the vicinity of Ridge Rd., for the Division of Engineering and Construction, Department of Public Service.

"Whereas, this ordinance constitutes an emergency measure in that the same provides for the usual daily operation of a municipal department; now, therefore

"Be it ordained by the Council of the City of Cleveland:

"Section 1. That pursuant to Section 167 of the Charter of the City of Cleveland it is hereby determined to make the public improvement of the construction of incinerator, complete in place, to be located in the vicinity of Ridge Rd., for the Division of Engineering and Construction, Department of Public Service, by contract duly let to the lowest responsible bidder after competitive bidding for a gross price.

"**Section 2.** That the Director of Public Service be and he hereby is authorized and directed to enter into a contract for the making of the above public improvement **with the lowest responsible bidder, after competitive bidding for a gross price.** Said contract shall contain a provision that the contractor upon request of said director shall furnish a correct schedule of unit prices, including profit and overhead upon all items constituting said improvement.

"**Section 3.** That the cost of said improvement hereby authorized shall be paid from Fund 240 (Ord. 413-51; 2416-47; 394-50, 2243-52 and 712-56; Request No. 83-56).

"**Section 4.** That this ordinance is hereby declared to be an emergency measure and, provided it receives the affirmative vote of two-thirds of the members elected to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor; otherwise it shall take effect and be in force from and after the earliest period allowed by law.

"Passed June 4, 1956.

"Effective June 8, 1956."

Plaintiff's petition states that subsequent to the passage and effective date of Ordinance 538-56 on March 13, 1957, the City of Cleveland issued an Invitation to Bid containing Special Notice to Bidders, General Conditions and bid forms for the construction of the Ridge Road Incinerator Plant for the City of Cleveland; said specifications and bid forms were prepared by Adache Engineers and George S. Voinovich as Associate Architect.

The petition sets forth Paragraph 45 of Division I, Section 2 of said Specifications as follows:

"**SUBLETTING OF INCINERATION WORK:**

"All work to be performed under the Incinerator Division III of these Specifications **shall be accomplished under the control of one firm,** corporation, contractor, subcontractor, etc., **who has the qualifications required under Division III** of the specifications and is named in the accepted proposal including the work of Division III."

The petition also sets forth the provisions of Section 7, Division III. of the Specifications relating to bids as follows:

"BIDS:

"a. **Each bid shall be accompanied** in duplicate with appropriate data, sketches, drawings, sales specifications, etc., so that a true and thorough evaluation analysis of the bid may be made. Specifically the items shall include, but shall not necessarily be limited to, the following:

"(1) General arrangement plans of incineration equipment, together with sufficient sections, details and dimensions necessary to determine the size, shape, and location of furnaces, flues, hoppers, doors, charging and ash dump openings, grate dump openings, combustion chambers, spray chambers, baffles, breechings, dampers, fans, and stacks.

"(2) Manufacturers' catalog data for stokers, fans, motors, ash gates, charging gates, hydraulic pumps and reservoirs, settling basin pumps, doors, dampers, and other mechanisms. Data shall include power re-

quirements, capacities, approximate size, and other pertinent design information.

"(3) Sketches, descriptions, etc., fully describing the type, manufacturer, A. S. T. M. designations, material, anchors, seats, fastenings, and construction details for refractory linings, and insulation.

"(4) Complete listing of all exceptions to drawings and specifications with a full description of the intended substitutions. In the case of the specifications, the division, section (if any), paragraph, and page numbers shall be referenced. In the case of the drawings, the drawing number, the detail identification, and the location from the nearest columns shall be referenced.

"b. Nothing contained in these specifications shall prohibit any Bidder from entering any number of separate bids, provided, however, that the bids shall name the incinerator subcontractors and describe their equipment, as enumerated in preceding subparagraphs.

"c. Appropriate recognition shall also be given to the changes in the total cost of the installation occasioned by any substitutions, clearly indicating, for evaluation purposes, whether the item substituted results in an increase or a decrease to the total cost. It shall be noted that all bids, and particularly cost changes based on substitutions, will be analyzed and evaluated by the concerned City representatives."

It is further alleged that when bids were received on April 25, 1957, opened and tabulated, only one of the said bidders who bid a gross price contract for the construction of an incinerator did furnish the detailed design drawings, data and other information required by the Specifications and necessary to evaluate whether said proposed incinerator did, in fact, conform to the Specifications; that the Board of Control of the City of Cleveland upon receiving a tabulation of the bids from the Commissioner of Purchases and supplies proceeded to determine the lowest responsible bidder without having the information required by the Specifications from two of the three gross price bidders and that the sole bidder who furnished the required appropriate data, sketches, drawings, etc., was not determined to be the lowest responsible bidder; that subsequent to the opening of the sealed bids material relating to Division III of the Specifications was inserted into the envelope containing the bid of the "so-called lowest responsible bidder"; that said material thus inserted was considered by the engineers of the City of Cleveland and the Board of Control prior to making a determination of the "so-called lowest responsible bid." Such an act, it is alleged, vitiates the bid, destroys the integrity of competitive bidding and is contrary to law; such an award is contrary to the Charter of Cleveland, the general law, and Ordinance No. 538-56; that the bid of the "so-called lowest responsible bidder" as determined by the Board of Control, designated in its bid a corporation to perform the incinerator work, which corporation fails to meet the qualification contained in Division I, Section 2, paragraph 45, and the qualifications contained in Division III of the qualifications.

The petition of plaintiff further alleges that on June 5, 1957 the

Board of Control of the City of Cleveland passed its resolution No. 388-57 which reads as follows:

"Resolution No. 388-57

"By Director Drasler

"Resolved by the Board of Control of the City of Cleveland Bid of The Hunkin-Conkey Construction Co. for the public improvement of Construction of Incinerator Plant to be located in vicinity of Ridge Road:

"Bid No. 1.

"Base Bid. For furnishing all labor, materials and equipment required to complete the work as described in the drawing and specifications, Divisions 1 through VII, for the construction of an Incinerator Plant, near Ridge Road at Clinton Road, Cleveland, Ohio.

"for the Division of Engineering and Construction, Department of Public Service, received on April 25, 1957, passed June 4, 1956, for a gross price "for improvement, in the aggregate amount of Two Million Four Hundred Ninety-Five Thousand Nine Hundred and No/100 Dollars (2,495,900.00) is hereby affirmed and approved as the lowest responsible bid; and the Director of Public Service is hereby authorized to enter into a contract for said improvement with said bidder.

"Said award of contract in excess of One Million Four Hundred Fifty Thousand and NO/100 Dollars ($1,450,000.00) shall be subject to the execution of a waiver by Hunkin-Conkey Construction Company of the certification of the balance of the cost of said contract until the authorization of such certification by Council.

"Yeas: Mayor Celebreeze, Director Locher, Acting Director Muntz, Directors Crown, Drasler, Warner, McCormick and Lucuoco.

"Nays: None.";

that this resolution determining the Hunkin-Conkey Construction Company to be the lowest responsible bidder and authorizing the execution of a contract therefor authorizes the execution of a contract contrary to the Charter of the City of Cleveland and general law and authorizes the unlawful expenditure of public money derived from taxation upon real and personal property located within Cleveland; that the City of Cleveland will unlawfully execute and certify a contract for the construction of the Ridge Road Incinerator Plant and will unlawfully expend public money therefore to the irreparable detriment of Cleveland and for which there is no adequate remedy at law.

To this petition the defendants in a joint answer set up two defenses, in the first of which in part it is admitted that the plaintiff has corporate capacity and that it is a taxpayer within the meaning of §733.59 R. C.; they admit plaintiff made demand upon Ralph S. Locher, Director of Law, to bring such an action and that he refused; that the Sections of the Ordinances and Charter of the City of Cleveland pleaded in plaintiff's petition and attached thereto as "Exhibit A" were duly enacted and in full force and effect at all times mentioned; admit the passage of Ordinance No. 538-56 and that pursuant thereto the City of Cleveland issued Invitation to Bid and received bids for the construction of the Ridge Road Incinerator until April 25, 1957, at which time they

were opened and tabulated; that among those submitting bids were plaintiff and Hunkin-Conkey Construction Company; that on June 5, 1957 The Board of Control of the City of Cleveland passed resolution No. 388-57 authorizing the award of the contract for the construction of the Ridge Road Incinerator to the Hunkin-Conkey Construction Company; defendants then deny each and every other allegation in plaintiff's petition not specifically admitted to be true.

For the Second Defense in their answer defendants incorporate all of their First Defense and in addition aver that all of the acts done by the City of Cleveland were in conformity to the laws of the State of Ohio, the Charter and Ordinances of the City of Cleveland and the usual and accepted practices in the preparation of plans, specifications, invitations to bid, evaluations of bid, recommendations and all other things done which resulted in the award made by the Board of Control of the City of Cleveland to the Hunkin-Conkey Construction Company and that for all of these reasons plaintiff is not entitled to any relief.

The Court has heard evidence with Exhibits on both sides and has had the benefit of oral argument and carefully prepared briefs by extremely able counsel for both sides.

Certain interrogatories propounded by plaintiff were answered by defendants.

From every thing before this Court it is clear that the bid of the Hunkin-Conkey Construction Company submitted pursuant to Cleveland Ordinance No. 538-56 and Invitation to Bid and Specifications for the Ridge Road Incinerator Plant was not accompanied by appropriate data, sketches, drawings, sales specifications, etc., so that a true and thorough analysis of the bid might be made as provided in Section 7, Division III of said Specifications.

The evidence further clearly establishes that Schaefer Bros. Inc., the designated subcontractor of Hunkin-Conkey Construction Company, for the installation of the incinerator has the following experience qualifications:

Schaefer Bros. Inc. has installed a successfully operating incinerator plant in Parma, Ohio, which went into service on December 15, 1956, and which tested out 225 tons in a 24 hour period. The largest amount burned since this test was 48 tons in a 7¼ hour period. This company also was the contractor on the modernization of the Cleveland Incinerator Plant which disposes of 900 tons a day. This modernization included the installation of five stokers and modernizing six furnaces. They have a contract for a Chicago Incinerator Plant, called the Lake Calumet Plant, which has not yet been constructed and is only on paper at this time. The capacity of this latter plant will be 900 tons per day. In addition, Schaefer Bros. Inc. has installed incinerator plants in Berea, Ohio, Maple Heights, Ohio, Euclid, Ohio, and Skokie, Illinois, all of various rated daily capacities.

Resolution No. 388-57 of the Board of Control authorized the Director of Public Service of City of Cleveland to enter into a contract for the construction of the incinerator plant in the aggregate amount of $2,495,900.00.

Defendants' answer to plaintiff's Interrogatory No. 8 states that the amount of money certified upon Ordinance No. 538-56 by the Commissioner of Accounts and Director of Finance of the City of Cleveland is $1,450,000.00.

Plaintiff's Interrogatory No. 9 requesting the amount of funds in Fund No. 240 of the City of Cleveland which said fund is described in Section 3 of Ordinance 538-56 is answered by the defendants and the amount is given as $1,468,562.50.

Section 167 of the Charter of the City of Cleveland reads: ·

**Public Improvements by Contract or Direct Labor.**

"Public improvements of all kinds may be made by the appropriate department, either by direct employment of the necessary labor· and the purchase of the necessary supplies and materials, with separate accounting as to each improvement so made, or by contract duly let to the lowest responsible bidder after competitive bidding, either for a gross price, or upon a unit basis for the improvement, or by contract containing a guaranteed maximum and stipulating that the city shall pay within such maximum the cost of labor and materials, plus a fixed percentage of profit to the contractor. The council shall by ordinance determine by which of the foregoing methods any improvement shall be made. Contracts may provide a bonus per day for a completion of the contract prior to a specified date, and liquidated damages to the city to be exacted in like sum for every day of delay beyond a specified date."

What the Charter provision, Section 167, means in the use of the words "lowest responsible bidder" is the bidder who is responsible and lowest in price on the advertised basis. The Invitation to Bid and the Specifications presented a common basis for bidding, and the bids must be measured by that standard. There can be no question that the bid must conform to the specifications, and the contract to both. See **Andrews v. Detroit, 233 Mich. 79, 206 No. W. 514.** But not every variation from the specifications will destroy the competitive character of the bid. To have that effect the variation must be substantial. To be substantial it must affect the amount of the bid. It must give the bidder an advantage or benefit not allowed to other bidders. It must be an element considered in fixing the price. See **Pascoe v. Borlum, 247 Mich. 343, 225 N. W. 506.**

Having in mind these essentials let us determine if the variation in the bid of Hunkin-Conkey Construction Company was a substantial one. Bearing in mind that Hunkin-Conkey Construction Company made no submittals with its bid under Section 7 of Division III, the uncontradicted testimony of a most impressive expert witness for the plaintiff, Robert Stellwagen, was that there could be a variance of about 20% in the cost of materials to be furnished for the incinerator depending on what the bidder specified. From the drawings, he observed that there was a difference of 3% capacity, with the difference in grate area in the alternatives provided in Drawing IN-1 of the drawings furnished to all bidders, and that this difference in capacity would amount to about $200,000.00 during the life of the plant. He testified in connection with

designated items, such as motors, that both General Electric and Westinghouse produced several types, any of which would fulfill the specifications yet vary as much as 20% in price. He made it clear that catalogue data as required by Section 7 of Division III of Specifications, if furnished, would tie the bidder down to every feature of a specific motor including price. An advantage would accrue to the bidder who did not submit such data as required under Section 7, Division III, of the Specifications. Mr. Stellwagen, who is a consulting engineer, specializing in refuse disposal and incineration especially for municipalities, further testified on the differences on makes of charging gates, stacking grates and settling basins, their strength and prices.

Without question, from the evidence, in the opinion of this Court, the failure of Hunkin-Conkey Construction Company to submit the drawings and data required under Section 7, Division III of the Specifications substantially affected the amount of the bid and gave an advantage to this bidder not allowed to the others. It clearly was a substantial element in fixing the price.

Section 167 of the Charter, supra, merely follows the general law that bidding for contracts for public improvements be on a competitive basis or "after competitive bidding." In competitive bidding the word competitive means pertaining to or involving competition. Competition, as defined by Webster's New International Dictionary means, "The Act of seeking or endeavoring to gain what another is endeavoring to gain at the same time." If two or more persons are endeavoring to gain the same thing at the same time, the essence of competition requires that each shall be free to act and have equal opportunities to secure the object sought. If one is hampered or restricted by conditions that do not apply to the other, then the moral soundness, the integrity of competition, is thereby undermined to the detriment of the public. That competition has a salutary effect upon price will not be denied. The minimum price of an article is measured by the cost of production while the maximum is measured by the profit that can be exacted by the producer.

In the instant case the bidders submitted their bids under the Invitation to Bid and the Specifications. The language of Section 7 of Division III of the Specifications, supra, is clear, plain, positive and mandatory. We must give this provision of the specifications such construction as its plain letter requires. Hunkin-Conkey Construction Company did not meet this mandatory requirement of the specifications.

In connection with experience qualifications, Section 4, Division III of the Specifications provides:

"4. EXPERIENCE QUALIFICATIONS:

"a. The work to be furnished and installed under this division of the specifications shall be accomplished by one firm, corporation, or contractor, who is qualified by actual incineration experience. If the contractor himself does not qualify for this type of work, he shall subcontract this work to a firm which does qualify. The minimum experience qualifications shall include the following:

"(1) Installation of complete incineration units in at least three

(3) successfully operating incinerator plants. Capacity of each of these plants shall be rated for 250 tons per day, or more.

"(2) Installation of at least two successfully operating, complete incineration units which, under actual tests, have been determined to operate at a capacity in excess of 125 tons per day minimum each."

From the evidence, it is the opinion of this Court that Schaefer Bros. Inc. substantially possesses the experience qualifications required.

Section 106 of the Charter of the City of Cleveland reads:

"Section 106: Contracts Certified.

"No contract, agreement, or other obligation involving the expenditure of money, shall be entered into, nor shall any ordinance, resolution, or order for the expenditure of money be passed by the council, or be authorized by any officer of the city, unless the director of finance first certify to the council or to the proper officer, as the case may be, that the money required for such contract, agreement, obligation, or expenditure, is in the treasury, to the credit of the fund from which it is to be drawn, and not appropriated for any other purpose, which certificate shall be filed and immediately recorded. The sum so certified shall not thereafter be considered unappropriated until the city is discharged from the contract, agreement or obligation."

The requirements of this section of the Charter are mandatory and do not seem to have been complied with in that the funds certified upon Ordinance 538-56 of the City of Cleveland are approximately $1,000,000.00 short of the proposed contract price for the Ridge Road Incinerator.

For the above reasons, the City of Cleveland and the other named defendants will be permanently enjoined from executing any contract with the Hunkin-Conkey Construction Company for the construction of the Ridge Road Incinerator Plant or any part thereof under Ordinance No. 538-56 and Board of Control of the City of Cleveland Resolution No. 388-57. A Journal entry will be drawn accordingly.