YOUNG, A TAXPAYER, APPELLANT, *v.* CITY OF DAYTON ET AL., APPELLEES.

(No. 2686—Decided July 19, 1962.)

272

*Messrs. Young, Pryor, Strickland & Falke*, for appellant.
*Mr. Herbert S. Beane*, city attorney, for appellees.

CRAWFORD, P. J.   Plaintiff has appealed on questions of law from an order sustaining a demurrer to his amended petition and dismissing the action, he having elected not to plead further.

The amended petition recites that plaintiff brought the action as a taxpayer, and that the solicitor of the defendant city of Dayton has refused to comply with a proper demand to bring the action, said demand having been made on June 26, 1961.

It is alleged that, while engaged in widening and improving Gettysburg Avenue, the defendant city owned certain land which it did not need, whereas the defendants, Harry and De Vora Mayo, owned certain other land which the city did need; that under the city charter the city purchasing agent was under a duty to sell property not needed for public use, after first giving opportunity for competition; and that, in this instance, the city, by ordinance, ordered its unneeded property to be sold at public auction to the highest bidder.

It is alleged further that "the city of Dayton and the defendants, Harry Mayo and De Vora Mayo entered into an agreement whereby said Mayos agreed to bid whatever sum was necessary to become the successful purchasers at said auction; that said city would furnish to the Mayos whatever sum of money they might be required to bid; that said city would purchase and Mayos would transfer and convey to the city, twenty (20) feet off the east end of the Mayo property at a price equal to whatever sum Mayos should bid for that portion of the city property so sold."

It is alleged that a public auction was held on June 2, 1961, at which the Mayos were the highest and best bidders in the amount of $2,000; that the city conveyed its unneeded property to the Mayos by deed dated June 21, 1961, and recorded July 1, 1961; and that the Mayos conveyed their property to the city by deed dated June 30, 1961, and recorded July 7, 1961.

The petition continues:

"Plaintiff further alleges that the city of Dayton traded its property for the twenty (20) feet off the east side of said Mayos' property; that said auction sale, if conducted, was fraudulently conducted for the purpose of obscuring the fact of said trade;

that there was no opportunity for competition at said sale; that competition was completely eliminated in that said sale had already been arranged prior to said auction, both as to the identity of the purchaser and the price to be paid, to wit: the exchange of twenty (20) feet taken by parallel lines off the east side of the aforesaid Mayo tract, and that the price received by said city of Dayton was wholly inadequate and bore no relation to the value of the property so sold.

"The plaintiff further alleges that the agreement between the city of Dayton and Harry Mayo and De Vora Mayo was contrary to law and the charter of said city of Dayton and was null, void and of no effect and that by reason of the foregoing, said auction sale was unlawful, null, void and of no effect."

The prayer is that the sale be declared void and be rescinded.

Counsel have agreed that we may examine and consider the city charter, and that the general statutes on the subject do not apply.

In support of his position, plaintiff has referred to the following sections of the charter:

Section 1 enumerates the powers of the city and concludes with the words, "and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this charter, or when not prescribed herein, in such manner as shall be provided by ordinance or resolutions of the commission."

Section 84 provides:

"The city purchasing agent shall, in manner provided by ordinance, purchase all supplies for the city, sell all real and personal property of the city not needed or unsuitable for public use or that may have been condemned as useless by the director of a department * * *."

Section 85 contains the provision:

"Before making any purchase or sale, the city purchasing agent shall give opportunity for competition, all proposals to be upon precise specifications, and under such rules and regulations as the commission shall establish * * *."

Section 92 reads:

"All contracts, agreements or other obligations entered into and all ordinances passed, resolutions and orders adopted, con-

trary to the provisions of the preceding sections, shall be void."

The substance of the issue before us is that, according to the plaintiff's argument, there was no actual opportunity for competition, whereas the defendant city urges that there was full opportunity for anyone who wished to do so to bid at the public auction.

Assuming the truth of the allegations in the petition, as we must for the purposes of the demurrer, the public auction supplied the outward form of competition, but the agreement for an even exchange of the properties removed all actual opportunity for competition.

Assuming the facts pleaded, the identity of the successful bidder and the price he was to pay were agreed and determined in advance of the public auction, i. e., the Mayos were to be the buyers and the land they then owned was to be the price. The provisions of this agreement were the very antithesis of competition and erased every opportunity to compete. The amount of the successful bid in dollars was without significance, except as a mere bookkeeping item.

The provisions of section 85 of the city charter require "opportunity for competition * * * upon precise specifications." That is to say, all who are interested shall have equal opportunity. The principle is well stated by the Common Pleas Court of Cuyahoga County as follows:

"If two or more persons are endeavoring to gain the same thing at the same time, the essence of competition requires that each shall be free to act and have equal opportunity to secure the object sought and if one is hampered or restricted by conditions that do not apply to the other, then the moral soundness, the integrity of competition, is thereby undermined to the detriment of the public." *National Engineering & Contracting Co.* v. *City of Cleveland*, 76 Ohio Law Abs., 303.

That court had expressed a similar view in *Mog* v. *City of Cleveland*, 18 N. P. (N. S.), 49.

If the Mayos' property alone is acceptable as the purchase price for what the city has to sell, then only the Mayos can hope to bid successfully, and there is no opportunity for competition.

Counsel for defendant city argues that there is no provision against a trade or swap of properties. However, the provisions

of the charter specifying how unneeded property shall be disposed of prevent a trade or swap being made here. This fact was obviously recognized by the city when it passed the ordinance providing for the formalities, at least, of a public auction.

It may well be argued that the city ought to have authority to make such a trade. But it cannot do so without a revision of the charter authorizing it to do so.

Similar and sometimes painful problems have arisen in other municipalities under state statutes. See *Miller* v. *Village of Brookville*, 152 Ohio St., 217, and *Louisville & Nashville Rd. Co.* v. *City of Cincinnati*, 76 Ohio St., 481.

. It is our opinion that the amended petition states a cause of action, and that the demurrer should have been overruled.

The judgment is reversed and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

KERNS and SHERER, JJ., concur.