WHITE ET AL., APPELLEES, *v.* LONG ET AL., APPELLANTS.

[Cite as White v. Long, 12 Ohio App. 2d 136.]

(No. 324—Decided January 30, 1967.)

*Messrs. Nichols, Speidel & Nichols,* for appellees.

*Messrs. Ely, Moore & Tilbury,* for appellants James B. Long and Eugene Maxfield.

*Mr. Robert A. Jones,* prosecuting attorney, for appellant Board of Commissioners.

HILDEBRANT, P. J. This appeal on questions of law and fact is from the action of the court below in granting an injunction against the continued operation of a sewage disposal plant constructed by defendants, Long and Maxfield, owners and developers of a subdivision known as Longfield Acres, located in Miami Township, Clermont County, Ohio, in contemplation of serving some three hundred thirty-seven (337) houses. The disposal plant was constructed upon a tract of 1.385 acres purchased specifically for that purpose adjacent to the original subdivision acreage and plaintiff's (Herrle) line.

By stipulation, the cause is before this court upon the record and exhibits of the original trial of February 14, 1963, wherein the court granted an injunction on the record made on motion for new trial of September 16, 1965, which the court granted, and the record made at the new trial of February 11, 1966, when the court again granted the injunction.

The disposal plant has been dedicated by the owners to the county of Clermont and through its proper officials operated as a part of the Clermont County sanitary system. Effluent, in the form of treated, purified water, from the disposal plant is discharged into a small natural watercourse in existence upon the land of defendants at a point approximately 150 to 200 feet above plaintiff's (Herrle) property line, and continuing through the lands first of plaintiff Herrle, thence through lands of plaintiff White.

Plaintiffs made timely objection to the location and building of the plant which defendants, Long and Maxfield, nevertheless proceeded to construct.

Plaintiffs allege in their petition that the discharge from the disposal plant is offensive and odorous so as to constitute a private nuisance, for the abatement of which they have no remedy at law, with resulting irreparable injury.

Plaintiffs loosely allege a discharge of sewage and waste

upon their lands, which is not the fact in this case, and this court will confine its consideration of the rights of the parties herein with reference to the discharge of the effluent from the disposal plant in the form of treated and purified water into the natural watercourse on defendants' lands as constituting an enjoinable nuisance.

Plaintiffs and certain family members and relatives testified (transcript of February 14, 1963) as to conditions of the stream in the summer of 1962; that it was grayish or milky in color; that there was an odor about it objectionable to them; rocks in the creek were discolored and they found dead crawfish; that their pleasure in gathering wild flowers, picking blackberries and picnicing in the area was interfered with, and their use in running cattle on the land was interfered with, inferring the livestock would not drink the water. However, they also testified the stream went dry in summer and they piped water back to the livestock. They complained about a foamy deposit caused by detergents along the watercourse. Plaintiff White testified as to the odor (transcript of February 1963):

"Q. How far is the odor noticeable to you, sir? A. About fifteen feet, I would say."

Other witnesses placed the distance variously up to seventy-five feet. The plaintiffs testified the stream was too far away for any odor to be detected at their dwelling houses.

At the second trial of February 11, 1966, plaintiffs' witnesses simply reiterated their former testimony and said that the conditions of which they complained had worsened. In addition, plaintiffs conceded drainage from septic tanks of an area referred to as Melody Lane and certain livestock barns found its way into this stream at a point above the disposal plant.

It is clear from the record that defendants, Long and Maxfield, sought and obtained the approval of all public officials concerned with sanitation and health at all governmental levels, as to the situs and location of the plant, its type and construction and equipment, which includes duplicate equipment to take over in event of a breakdowwn of that in use, and the operation thereof.

Plaintiffs' witness Broeman, a consulting chemist since

1935, who tested a sample of water coming from the sewage disposal plant furnished by plaintiff White from some unknown point along the stream, taken in August 1962, when the stream was dry above, testified the sample was oxidized effluent from the sewage disposal system with very little offensive matter which he defined as "material that will cause an odor"; that it had no significant odor to it and had passed the stage at which it would develop an odor; some phosphates were present, due to detergents, which could possibly cause some slightly foamy effect, but not very great; that the water was potable for both humans and livestock. The same witness tested for the defendants as to a sample of water taken from above the disposal plant and found only a slight, insignificant difference from the White sample of six parts BOD per million to five parts BOD per million; from the standpoint of the pollution in the water, practically nothing and of no effect; that the effluent was below the standard permitted by the federal government in the area.

Called by the defense, the county and sanitary engineer testified the site was approved by the planning commission and that any odor was usual to such plants and confined to the plant.

The witness Speis, district sanitary engineer, Ohio Department of Health, testified the operation ninety per cent efficient, no odor to the effluent water.

The witness Mace, Cincinnati professional engineer and engineer of Clermont County Sewage District, testified as a specialist on water and bacteria sewage. He approved from the start the site, plant, inspections, tests, equipment, and that the only odor was typical of all such plants, with this particular plant operating at a phenominal efficiency.

The witness Day, sanitarian, Clermont County Department of Health, testified the Melody Lane septic tanks drain into the stream at a point above the plant.

Dr. Pruel, sanitary engineer and professor at the University of Cincinnati, testified as to the use of new improved hard detergents replacing abandoned soft detergents as an improvement; that increased users of the system increased its efficiency and that chlorination now in use improved the condition, and that when on the stream in February 1966, there was no sludge.

There are fixed rules to guide the courts in the granting or refusing of injunctions. The right to an injunction must be clear and the proof thereof clear and convincing, and the right established by the strength of plaintiffs' own case rather than by any weakness of that of his adversary.

It is said an injunction will not be granted where damage is trifling, fanciful, sentimental or a mere inconvenience, and that the invasion of a private right without actual and palpable injury does not stir the conscience of the court so that injunction will lie.

It is said that caution should be exercised in granting injunctions, and especially so in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department of government. The case at bar appears to this court to be such a case since the plant and its operation are under the constant supervision of sanitation and health officials of all levels of government.

It is stated that in injunction suits, regard must be had not only for the rights of the complainants but also for the injuries which might result to others from the granting of an injunction. This is the well established comparative injury or balance of convenience rule which is said to be frequently applied to applications for injunctions against nuisances or to restrain pollution of water. See annotation in 46 A. L. R. 60.

Following the fixed rules stated above as applied to the evidence herein summarized above, this court is of the opinion that the plaintiffs have failed to sustain the burden of proof required for the granting of an injunction.

The court has carefully examined the citations of the plaintiffs to support their contentions and has no quarrel therewith. However, we have no difficulty in distinguishing them from the case at bar, including the case of *Vian* v. *Sheffield Building & Development Co.*, 85 Ohio App. 191, heavily relied upon by plaintiffs.

The injunction is denied.

*Injunction denied.*

LONG and HOVER, JJ., concur.