HINES *v.* BOARD OF EDUCATION OF THE CLEVELAND CITY SCHOOL DISTRICT ET AL.

(No. 074531 — Decided July 22, 1985.)

Court of Common Pleas of Cuyahoga County.

*John R. Climaco, Thomas L. Colaluca* and *John B. Webster,* for plaintiff.

*Deborah Nicastro,* for defendant Automated Disposal, Inc.

*William T. Wuliger,* for defendant board of education.

JAMES J. MCMONAGLE, J. This matter came before this court upon the plaintiff's complaint seeking declaratory relief, a temporary restraining order, and a preliminary permanent injunction.

Pursuant to the Rules of Civil Procedure, the request for temporary restraining order and preliminary permanent injunction were merged into a hearing on the merits in the matters now before this court, the issues having been joined by answers filed by all of the defendants. The plaintiff's complaint seeks relief against the Board of Education of the Cleveland School District ("the board") and its individual members, Alva T. Bonda, Joseph G. Tegreene, Joseph M. Gallagher and Ralph J. Perk, Jr., and also against Frederick D. Holliday, Superintendent of the school system; Paul Yacobian, Business Manager of the system; and Automated Disposal, Inc. ("ADI"), the successful bidder on the contract that is the subject of the within lawsuit.

The complaint of the plaintiff-taxpayer, Elsie Hines, substantially states, *inter alia,* that the board abused its discretion, and violated state law and federal court orders in the manner and

means by which it awarded ADI a contract for the hauling and disposal of garbage generated in connection with the operation of the Cleveland Public School system.

The facts concerning events prior to April 26, 1984, the date of the awarding of the subject contract, are substantially not in dispute.

In 1981, the board advertised for bids for the removal and disposal of rubbish from the board's various physical structures, both school buildings and administrative buildings. Pursuant to the bids submitted, the board signed a contract with Regional Refuse Systems, Inc. ("Regional"), and ADI, a joint venture. This contract provided that the Regional-ADI joint venture would remove the board's garbage for $1.44 per cubic yard from November 1, 1981 through December 31, 1982.

On March 4, 1982, the board and the above-mentioned joint venture entered into a supplemental agreement allowing Regional to withdraw from the joint venture and assign its interest to ADI.

Browning Ferris Industries of Ohio ("BFIO") and ADI entered into an oral agreement by which BFIO would be responsible for collecting the trash and ADI would be responsible for any contact with the board. Pursuant to this agreement, BFIO reported to ADI the amount of refuse it had picked up each week and charged ADI $1.84 per cubic yard. Based upon what is reflected in these reports, ADI retained seven percent of the monies that are collected for its services rendered in its relations with the board. BFIO received $1.71 per cubic yard for the refuse it hauled for the board, or, in other words ninety-three percent of the $1.84 per cubic yard charge.

On January 25, 1983, the board and ADI entered into another supplemental agreement. This agreement extended the original contract from January 1, 1983, through December 31, 1983, with a price per cubic yard of $1.84.

This extension was based upon the original joint venture's bid proposal dated October 5, 1981, which had contained a clause permitting two one-year options at specified prices.

In late 1983, ADI proposed to extend its previous contract to December 31, 1984, at the rate of $1.84 per cubic yard and also proposed that the board should be permitted to have four one-year options at the rate of $1.84. The board, however, refused to reformulate and rewrite the specifications, but instead opted to enter into an interim contract for 1984.

In January 1984, the board passed Resolution No. 49-84 authorizing the business chief to negotiate a contract with ADI for $1.84 per cubic yard for 1984. ADI did not sign this contract. However, its subcontractor, BFIO, did continue to remove the board's garbage without a contract, but submitted bills charging the board $3.50 per cubic yard.

On March 19, 1984, the board's Audit Committee met and conversation was had regarding competitive bidding of the trash-hauling contract.

On April 26, 1984, Resolution No. 250-84 appeared before the board, authorizing the business chief to enter into a new contract with ADI at a price of $1.84 per cubic yard for the years 1984, 1985, and 1986. This resolution had not previously been submitted to either the Business Affairs Committee or to any other committee of the board. The board discussed the merits of the resolution, and heard testimony from an individual who was an officer of the Inland Refuse Transfer Company who indicated that his firm could perform like or similar services at a lower cost to the board. The board, however, voted to enter into an agreement with ADI. Subsequent to the board's passage of the resolution, the business chief certified that the monies were available to

fund such a contract, and the state fiscal officer (who had been assigned to oversee the board's operation since it was in receivership at that time) also indicated approval from the state.

In order to prevail on the merits of this case, the plaintiff-taxpayer must prove, by clear and convincing evidence, that:

(1) the board's award of this contract to ADI constituted an abuse of discretion; and

(2) the award of this contract resulted in some tangible harm to the public in general, or to the plaintiff as an individual.

The court, in *White* v. *Long* (1967), 12 Ohio App. 2d 136 [41 O.O.2d 200], acknowledged the gravity of the task presented by a complaint for equitable relief such as the one before us, as follows:

"There are fixed rules to guide the courts in the granting or refusing of injunctions. The right to an injunction must be clear and the proof thereof clear and convincing, and the right established by the strength of plaintiff's own case rather than by any weakness of that of his adversary.

"It is said an injunction will not be granted where damage is trifling, fanciful, sentimental or a mere inconvenience, and that the invasion of a private right without actual and palpable injury does not stir the conscience of the court so that injunction will lie.

"It is said that caution should be exercised in granting injunctions, and especially so in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department of government." *Id.* at 140.

With these cautionary words in mind, we must ascertain whether or not the board abused its discretion by awarding the trash-hauling contract to ADI. The board awarded the contract without utilizing the competitive bidding or requests for proposals processes. A minority business enterprise was neither sought out nor retained for the job. Certifying and verifying signatures were not obtained until after the board resolved to grant the contract to ADI. Moreover, at the time that the board was considering ADI, its Articles of Incorporation had been cancelled by the Secretary of State for non-payment of franchise taxes. Do these facts taken together constitute abuse of discretion? The term "abuse of discretion" connotes more than an error of law or of judgment. Indeed, it implies an unreasonable, arbitrary or unconscionable attitude. See *Dayton, ex rel. Scandrick,* v. *McGee* (1981), 67 Ohio St. 2d 356, 359 [21 O.O.3d 225].

It is true that trash-hauling contracts were competitively bid in prior years. However, past procedures were not binding upon the board like formalized rules or statutory mandates would be. In addition, minority business enterprise guidelines merely set up goals, not absolutes.

"The failure of a public official to initiate a particular course of conduct, the pursuit of which is not required by clearly defined limits of his authority, does not constitute an abuse of discretion." *Neiswender* v. *Edinger* (1978), 59 Ohio App. 2d 25 [13 O.O.3d 96], paragraph six of the syllabus.

According to the testimony of several board members, the decision to award the contract to ADI was not arbitrary, but rather it was based upon reasonable and sufficient information. Some of the criteria considered were: price (satisfactory in terms of the inflation rate), ability to perform without a break in service, and protection of the health and safety of the school children.

The plaintiff further alleges that violations of R.C. 5705.412 and 3313.488(A) of necessity void the contract between the board and ADI. R.C.

5705.412 concerns the certification of adequate revenues and recites in part as follows:

"Notwithstanding section 5705.41 of the Revised Code, no school district shall adopt any appropriation measure, *make any contract,* give any order involving the expenditure of money, or increase during any school year any wage or salary schedule unless there is attached thereto a certificate signed by the treasurer and president of the board of education and the superintendent * * *." (Emphasis added.)

Board Treasurer Paul Yacobian testified that a certificate of adequate revenues was signed by the treasurer, president and superintendent in accordance with statute. The plaintiff's position is that because the certificate was not executed *prior* to the adoption of Resolution No. 250-84, the procedure was defective and ADI's contract was void. However, no reading of R.C. 5705.412 requires a certificate before the board passes a resolution. As long as the certification is signed before the contract is executed (as was the case herein), the board's action is valid.

R.C. 3313.488(A) states in part:

"Any contract or expenditure made, order given, or schedule adopted or put into effect without the written approval of the superintendent of public instruction is void, and no warrant shall be issued in payment of any amount due thereon."

Originally, in her complaint, the plaintiff contended that the state administrator never approved the contract at issue here. In fact, his approval was obtained, and the plaintiff presented no evidence on this issue at trial. As can be seen from the foregoing, the board of education acted in full compliance with statutory mandates when it awarded the contract to ADI.

On April 26, 1984, when the board entered into a contract with ADI, ADI had its corporate charter revoked by the Secretary of State for non-payment of taxes. In plaintiff's view, ADI was then a nonexistent entity; and for the board to have dealt with ADI was an abuse of its circumscribed discretion. Admittedly, the board erred in failing to check the corporate status of the company to which it wished to let a sizeable contract. Still, that error did not rise to the level of unreasonableness that courts define as an abuse of discretion. Moreover, plaintiff's interpretation of ADI's status is misguided. Actually, ADI, with its cancelled articles, was a *de facto* corporation capable of suing, being sued and making contractual commitments.

"Where the charter powers of a corporation are cancelled under the provisions of Section 5509, General Code [R.C. 5733.20], for failure to make its necessary reports and pay taxes, and later the corporation is reinstated by complying with Section 5511, General Code [R.C. 5733.22], during the time between such cancellation and reinstatement, the corporation is a *de facto* corporation, and one having contracted with it as such during such time cannot raise the question of its corporate capacity." *I.J. Goldstein Co.* v. *Mitchell* (1921), 14 Ohio App. 231. See paragraph one of the syllabus, *GMS Mgmt. Co.* v. *Axe* (1982), 5 Ohio Misc. 2d 1.

This court does not agree with all of the methods used or procedures followed in the awarding of this contract, but this opinion, standing alone, is not sufficient to grant the relief requested herein.[1]

---

[1] "The most odious and dangerous of all laws would be those depending on the discretion of judges. Lord Camden, one of the greatest and purest of English judges, said, 'that the discretion of a judge is the law of tyrants; it is always unknown; it is different in different men; it is casual, and depends upon constitution, temper and passion. In the

The plaintiff has failed to establish by clear and convincing proof any abuse of discretion on the part of the board. Additionally, the record is devoid of evidence that the plaintiff or the general public suffered injury as a result of the board's actions in this matter.

For the reasons stated herein, judgment is hereby granted in favor of the defendants, and against the plaintiff on her complaint for declaratory and injunctive relief.

*Judgment accordingly.*

---

best it is oftentimes caprice; in the worst, it is every vice, folly and passion to which human nature can be liable.' " *State* v. *Cummings* (1865), 36 Mo. 263, 278, 279, reversed on other grounds in (1867), 71 U.S. (4 Wall.) 277.