WILSON BENNETT, INC. et al., Appellees,

v.

GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY et al., Appellants.

[Cite as *Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.* (1990), 67 Ohio App.3d 812.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 58133, 58159.

Decided May 29, 1990.

*Millisor & Nobil, John E. Holcomb, Michael L. Fortney* and *Tod T. Morrow,* for appellees.

*Thomas E. Lenahan* and *Thomas P. Gill,* for appellant Seuffert Construction Co.

*Douglas A. Gonda* and *Douglas L. Kohout,* for appellant Greater Cleveland Regional Transit Authority.

JOHN V. CORRIGAN, Judge.

On October 31, 1988, defendant-appellant, the Greater Cleveland Regional Transit Authority ("appellant GCRTA") gave notice that it would accept bids for the rehabilitation of the Brooklyn Garage located in the city of Cleveland, Ohio. The rehabilitation project was known as Project 17A. Appellant GCRTA received bids for Project 17A on December 22, 1988, but they were all rejected.

On January 27, 1989, appellant GCRTA sent out a second invitation for bids which contained instructions to bidders as to how they were to bid for Project 17A. The instructions to bidders, set forth in appellant GCRTA's Project Manual, advised the bidders that the successful bidder agreed that Disadvantaged Business Enterprises ("DBE") would have the opportunity to participate in the performance of contracts and subcontracts.

The instructions in the project manual required that the bid be "responsive" in order to be considered, or it would be rejected. The instructions went into great detail to provide those aspects that would make a bid responsive. The bid had to contain the following three items: (1) an assurance that a good faith effort was used in order to attain the level of DBE participation sought

by appellant GCRTA; (2) a completed schedule of DBE participation; and (3) letters of intent to perform signed by the DBE subcontractor listed on the schedule.

On January 27, 1989, both plaintiff-appellee, Wilson Bennett, Inc. ("appellee"), and defendant-appellant Seuffert Construction Company, Inc. ("appellant Seuffert") submitted bids. Appellee met the goals for DBE participation in its bid, but appellant Seuffert did not, because it failed to enclose certain required documents. Appellant Seuffert failed to submit a required affidavit, a completed schedule of DBE participation, and a letter of intent to perform from each DBE subcontractor listed on the schedule. Appellant Seuffert did submit the lowest bid for Project 17A.

After appellant Seuffert submitted its bid, appellant GCRTA requested it to submit a "Pre–Award Evaluation Data Form." By reviewing a pre-award evaluation, appellant GCRTA could determine whether appellant Seuffert's bid was responsive. Appellant GCRTA's evaluation of the Pre–Award Evaluation Data Form resulted in a recommendation to award the contract for Project 17A to appellant Seuffert.

On February 8, 1989, upon learning of the recommendation to award the contract to appellant Seuffert, appellee submitted written objections to appellant GCRTA concerning appellant Seuffert's bid. Appellee alleged that appellant Seuffert's bid was not responsive to the instruction to bidder's portion of the Project Manual. On February 21, 1989, the Board of Trustees of appellant GCRTA conducted a meeting to review the recommendation to award the contract to appellant Seuffert. At the meeting, appellee's counsel was permitted to present its objections. On February 28, 1989, the board of trustees awarded the contract to appellant Seuffert.

Appellee then filed a formal administrative protest with appellant GCRTA with the same objections it had made before the board of trustees. On March 20, 1989, appellee submitted written arguments in support of its protest. On the same day, appellee's protest was overruled. Appellant GCRTA executed a contract for the rehabilitation of the Brooklyn Garage with appellant Seuffert.

On March 22, 1989, appellee and several of its subcontractors ("appellees"), filed a complaint in the federal district court seeking a temporary restraining order against appellant GCRTA. Appellees' federal court action was dismissed on April 3, 1989 on the basis that the federal court lacked jurisdiction. On April 6, 1989, appellees filed the instant action seeking the trial court to declare the construction contract between appellants void as contrary to law, and further requested a preliminary and permanent injunction to prevent the performance of the allegedly void contract for the construction of the Brooklyn Garage.

On April 14, 1989, the trial court conducted a hearing on appellees' separate motion for a temporary restraining order. The trial court did not rule on the issue of a temporary restraining order; thus, construction on Project 17A continued. On May 2, 1989, a bench trial commenced and continued until May 9, 1989. At trial, the trial court merged the issue of a preliminary injunction with appellees' request for a permanent injunction. At the conclusion of the trial, the trial court, once again, did not issue any temporary order enjoining the progress of the construction contract.

Over two months after the trial, on July 13, 1989, the trial court issued its opinion and judgment entry. In its order, the trial court found that appellant Seuffert was a non-responsive bidder on Project 17A for its failure to submit information pre-bid, which was required to be submitted according to the Project Manual. Thus, the trial court declared the contract between appellants to be void as contrary to law. The trial court granted appellees' motion for preliminary and permanent injunction and ordered appellant GCRTA enjoined from paying any monies to appellant Seuffert on the void construction contract awarded on Project 17A. Subsequently, the trial court issued an order staying its permanent injunction pending appeal.

Appellant GCRTA filed a timely notice of appeal and subsequently raised the following assignments of error:

"I. Plaintiffs lack standing to seek injunctive relief to restrain the performance of this contract.

"II. The trial court erred as a matter of law in concluding that the award of the contract to defendant Seuffert violated Ohio and federal bidding laws.

"III. Equitable principles precluded the imposition of injunctive relief."

Appellant Seuffert also filed a timely notice of appeal and subsequently raised the following assignments of error:

"I. The trial court erred by holding that the DBE participation goal of R.T.A. was a matter of bid responsiveness.

"II. The trial court erred by granting injunctive relief.

"III. The trial court erred by enjoining R.T.A. from paying any funds to Seuffert for services performed."

In its first assignment of error, appellant GCRTA argues that appellees lacked standing to seek a preliminary and permanent injunction to perform appellants' contract which appellees sought to have declared void as contrary to law. Appellant challenges the trial court's conclusion that appellees had standing both as taxpayers and as unsuccessful bidders.

An action for an injunction to prevent the award of a construction contract can be brought by a taxpayer. *Regional Refuse Systems, Inc. v. Cleveland* (Oct. 28, 1982), Cuyahoga App. No. 44433, unreported, 1982 WL 5983; *Cleveland, ex rel. Industrial Pollution Control Inc., v. Cleveland* (Nov. 27, 1985), Cuyahoga App. Nos. 49446, 49495 and 49777, unreported, 1985 WL 3989. A taxpayer is entitled to prosecute an action to enjoin the execution and performance of a contract on the grounds that there was no competitive bidding and it was contrary to law. *Coleman, ex rel. State, v. Munger* (1948), 84 Ohio App. 148, 39 O.O. 170, 83 N.E.2d 809, paragraph one of the syllabus. Such a taxpayer's action will not be barred because the taxpayer had a financial interest in a company which placed an unsuccessful bid for the work, unless there is a showing that the taxpayer was not acting in good faith. *Id.*

A party wishing to bring a taxpayer's action for injunction must first make a written request to the Director of Law. If the Director of Law takes no action, the individual taxpayer may bring the action in his own name. *Industrial Pollution Control, Inc., supra*, at 7; *State, ex rel. Cleveland City Council, v. Cuyahoga Cty. Bd. of Elections* (1974), 40 Ohio App.2d 299, 302, 69 O.O.2d 273, 275–276, 318 N.E.2d 889, 891–892.

In the instant case, appellee failed to make a written demand that the Director of Law institute an action seeking declaratory and injunctive relief. Thus, the trial court erred in concluding that appellees had standing as taxpayers.

Although the trial court erroneously determined that appellees had standing as taxpayers, that error did not prejudice appellees' cause as the trial court did correctly find standing as unsuccessful bidders. See *State, ex rel. United McGill Corp., v. Hamilton* (1983), 11 Ohio App.3d 102, 103, 11 OBR 155, 156, 463 N.E.2d 405, 406–407.

The common-law doctrine of standing to sue involves a determination of whether a party is directly benefitted or injured by a judicial resolution of a controversy. *West Clermont Edn. Assn. v. West Clermont Bd. of Edn.* (1980), 67 Ohio App.2d 160, 21 O.O.3d 457, 426 N.E.2d 512, paragraph one of the syllabus. A corporation has standing to bring a suit for declaratory and injunctive relief, if there is a justiciable controversy affecting it as a prospective or disappointed bidder seeking to enjoin the award and execution of a contract it contends is contrary to law. *United McGill Corp., supra; Control Data Corp. v. Controlling Bd.* (1983), 16 Ohio App.3d 30, 16 OBR 32, 474 N.E.2d 336, paragraph one of the syllabus.

In order to determine whether appellees had standing to sue, two determinations must be made. First, a justiciable controversy must exist;

and second, appellees must have a sufficient stake in its outcome. See *Control Data Corp., supra.* In the instant case, a justiciable controversy existed, wherein appellant Seuffert's bid was not responsive to the "Instructions to Bidders" portion of the Project 17A Manual. Furthermore, appellees' stake in the outcome of this controversy lies in their status as a prospective, and ultimately, unsuccessful bidder on the Project 17A construction contract. Thus, appellees had a sufficient stake in the outcome of a justiciable controversy to provide them standing to bring an action for declaratory and injunctive relief.

Appellant GCRTA's first assignment of error is not well taken and is overruled.

Appellant GCRTA's second assignment of error and appellant Seuffert's first assignment of error will be discussed jointly, since they both pertain to the ultimate issue of whether the trial court erred in concluding that pursuant to Ohio competitive bidding laws, the contract between appellants GCRTA and Seuffert was null and void. The trial court held that appellant Seuffert was a non-responsive bidder and received a competitive advantage; therefore, appellants' contract was void as contrary to Ohio competitive bidding laws.

 In order for the contract between appellants GCRTA and Seuffert to be valid, it must be in compliance with the Ohio competitive bidding laws. *Darin & Armstrong, Inc. v. U.S.E.P.A.* (N.D.Ohio 1976), 431 F.Supp. 456. Where a bid deviates from the specifications or instructions in such a way that the competitive nature of the bidding process is destroyed, a suit may enjoin the execution of a contract upon that bid. *Natl. Eng. & Contracting Co. v. Cleveland* (1957), 76 Ohio Law Abs. 303, 146 N.E.2d 340; *Young v. Dayton* (1962), 116 Ohio App. 271, 20 O.O.2d 90, 188 N.E.2d 166. Invitations to bid and specifications present a common basis for bidding and require competition, wherein each individual shall be free to act and have an equal opportunity to secure the bid. *Young, supra.*

 In a bid for a construction project, not every variation from the instructions or specifications will destroy the competitive character of the bid. *Natl. Eng. & Contracting Co., supra,* paragraph four of the syllabus. To have that effect, the variation from the instructions or specifications must be substantial, and to be substantial, it must affect the amount of the bid and must give the bidder an advantage or benefit not allowed to other bidders. *Id.* Appellant GCRTA may waive defects in the form of a bid where such waiver works no prejudice to the rights of the public for whom it acts. *State, ex rel. Ross, v. Bd. of Edn.* (1884), 42 Ohio St. 374.

Appellant GCRTA's awarding of the Project 17A contract was subject to the Ohio competitive bidding laws, which require that the award shall be made to the lowest and best bidder. R.C. 307.86; *Altschul v. Springfield* (1933), 48 Ohio App. 356, 1 O.O. 522, 193 N.E. 788. Appellant GCRTA was not required to award the contract to the lowest bidder; rather, it was empowered to make a qualitative determination as to which bid was both lowest and best. *Dayton, ex rel. Scandrick, v. McGee* (1981), 67 Ohio St.2d 356, 21 O.O.3d 225, 423 N.E.2d 1095.

The determination whether to award a contract based on the lowest and best bid is solely within the sound discretion of appellant GCRTA, the contracting authority. *Altschul, supra*, at paragraph one of the syllabus; *State, ex rel. Executone of Northwest Ohio, Inc., v. Commrs. of Lucas Cty.* (1984), 12 Ohio St.3d 60, 12 OBR 51, 465 N.E.2d 416. This discretion is not vested in the courts, and the courts cannot interfere in the exercise of this discretion unless appellant GCRTA abused its discretion or acted fraudulently. *Altschul, supra.*

In the instant case, we cannot find that appellant GCRTA, in making its award of the Project 17A contract to appellant Seuffert, had abused its discretion. We cannot conclude that appellant Seuffert's failure to submit an affidavit, a DBE participation schedule and a letter of intent to perform constituted a non-responsive bid on behalf of appellant Seuffert. Appellant GCRTA's variation from the "Instructions to Bid" did not amount to a substantial variation that destroyed the competitive nature of the bid. We fail to find how there was an unfair bidding advantage for appellant Seuffert.

For the foregoing reasons, we conclude that the trial court erred in declaring the contract between appellants GCRTA and Seuffert void as contrary to the Ohio competitive bidding laws. Thus, appellant GCRTA's second assignment of error and appellant Seuffert's first assignment of error are well taken and are sustained.

Appellant GCRTA's third assignment of error and appellant Seuffert's second assignment of error will be discussed together as they both pertain to the trial court's granting of a preliminary and permanent injunction. Appellants GCRTA and Seuffert both contend that the trial court erred in granting appellees' motion for preliminary and permanent injunction, which were merged at trial.

It is axiomatic that the remedy of an injunction is unusual and should not be granted if there is an adequate remedy at law. *Oberhaus v. Alexander* (1971), 28 Ohio App.2d 60, 57 O.O.2d 107, 274 N.E.2d 771. "The proof necessary to support the granting of an injunction must be clear and convinc-

ing, and the right thereto must be clear and established by the strength of plaintiff's own case and not by the weakness of defendant's case." *White v. Long* (1967), 12 Ohio App.2d 136, 140, 41 O.O.2d 200, 202, 231 N.E.2d 337, 340.

Injunctive relief is the proper remedy for an unsuccessful bidder to bring against a contracting authority where it is alleged that a contract was unlawfully awarded to another bidder. *CB Transp. v. Bd. of Mental Retardation* (1979), 60 Ohio Misc. 71, 14 O.O.3d 328, 397 N.E.2d 781, paragraph one of the syllabus. In order to prevail on a complaint seeking injunctive relief with respect to the award of a contract, the plaintiff must prove, by clear and convincing evidence, that: (1) the award of the contract constituted an abuse of discretion; and (2) the award of the contract resulted in some tangible harm to the public in general, or to the plaintiff individually. *Hines v. Cleveland Bd. of Edn.* (1985), 26 Ohio Misc.2d 15, 26 OBR 348, 499 N.E.2d 39, paragraph one of the syllabus.

In the instant case, construction on Project 17A continued, despite the ongoing litigation to resolve this matter. The trial court initially failed to rule on appellees' motion for a temporary restraining order prior to trial. Then, the trial court failed to issue a temporary order enjoining the construction of Project 17A at the conclusion of the trial. We note that based on the nature of this case, there were some grounds upon which the trial court could have issued a temporary or preliminary injunction prior to its ruling regarding a permanent injunction.

Although neither a temporary restraining order was ruled on nor a preliminary injunction granted, the trial court did err in granting appellees' request for a permanent injunction. Appellees failed to establish by clear and convincing evidence that there was any abuse of discretion on the part of appellant GCRTA in awarding the Project 17A contract to appellant Seuffert. Furthermore, there is no indication that appellees or the general public suffered any injury as a result of appellant GCRTA's actions. Thus, the Project 17A contract between appellants was valid, and no permanent injunction should have been granted to enjoin its execution.

Appellant GCRTA's third assignment of error and appellant Seuffert's second assignment of error are with merit and are sustained.

In its third assignment of error, appellant Seuffert contends the trial court erred by enjoining appellant GCRTA from paying any monies to it on the Project 17A construction contract. Appellant Seuffert argues that it is entitled to payment for services performed and materials purchased prior to the trial court's issuance of the injunction.

■ In addressing appellant Seuffert's third assignment of error, appellee asserts that the contract between appellants GCRTA and Seuffert was void, thus any payments to appellant Seuffert on the contract would be unlawful and prohibited. See *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 34 O.O.2d 278, 214 N.E.2d 408. Even where there is a void contract, if such a contract is made in good faith and vast expenses are incurred by the contractor in preparing to complete it, a court will not enjoin the payment of the reasonable value of services rendered. *State, ex rel. Miller, v. Bd. of Cty. Commrs.* (Apr. 27, 1978), Cuyahoga App. No. 36979, unreported. The fact that the contract, in the instant case, may have been void would not be sufficient to enjoin the payment to appellant Seuffert for work performed on the contract.

In the instant case, we have already concluded that the contract between appellant GCRTA and appellant Seuffert was not void as contrary to law. Thus, by applying basic equitable principles, we conclude that appellant Seuffert was entitled to compensation for the work it actually performed and the benefit it conferred. *State, ex rel. Corrigan, v. Seminatore* (1981), 66 Ohio St.2d 459, 472, 20 O.O.3d 388, 396, 423 N.E.2d 105, 114.

Appellant Seuffert's third assignment of error is well taken and is sustained.

For the foregoing reasons, we find that the trial court erred in concluding that the Project 17A contract between appellants GCRTA and Seuffert was void as contrary to law. Additionally, we find that after the trial court conducted its trial, which merged the issues of preliminary and permanent injunctions, it erred in issuing a permanent injunction.

Accordingly, we conclude that the Project 17A contract between appellants GCRTA and Seuffert is valid and enforceable; thus, appellants are not enjoined from performing their respective obligations set forth in the contract.

The trial court decision is reversed.

*Judgment reversed.*

MATIA, J., concurs.

JOHN F. CORRIGAN, J., concurs in part and dissents in part.

JOHN F. CORRIGAN, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's determination that the contract between appellant GCRTA and appellant Seuffert was valid and consistent with Ohio's competitive bidding laws. I do concur with the majority's opinion in two respects, however. First, I agree with the majority's conclusion that, while the appellees lack standing as taxpayers, they may maintain this action as unsuccessful bidders. Further, I agree that, regardless of the validity of

the contract, the trial court erred in enjoining appellant GCRTA from paying any monies to appellant Seuffert on the Project 17A construction contract. Appellant Seuffert was entitled to compensation for the work it actually performed.

However, I believe that GCRTA's failure to require compliance with material bidding instructions and Seuffert's failure to comply with those instructions compromised the integrity of the bidding process. Since the failure to comply with these instructions materially affected the competitive nature of the bidding process, I would affirm that portion of the trial court's judgment which declared the contract void as contrary to law.

GCRTA's Project Manual sets forth the requirements for responsive competitive bidding for Project 17A. Under the manual's "Instructions to Bidders," paragraph 13.1 requires that a bid "must comply in all material respects with the terms and conditions" of bidder instructions in order to be determined "responsive." Here, the record clearly shows that appellant Seuffert failed to comply with bidder instructions by failing to include with its bid (1) an affidavit of its good faith effort to reach minority subcontractor participation goals, (2) a complete schedule of minority subcontractor participation and the prices of their contracts, and (3) letters of intent from all listed minority subcontractors.

GCRTA's effective waiver of these requirements for the benefit of Seuffert represents a significant competitive advantage over those contractors who complied with the project bidding instructions. As the trial court recognized, a conforming bidder who must complete his negotiations with minority subcontractors prior to submitting his bid has less leverage in those negotiations than a non-conforming successful bidder who, by virtue of having the contract in hand, may entice lower subcontractor bids. Moreover, the non-conforming contractor enjoys the advantage of being able to submit a low bid knowing that should the bid prove to be uneconomical, he may effectively end the contract by intentionally failing to meet minority subcontractor participation standards.

Further, this court should not encourage the arbitrary waiver of non-compliance with material bidding instructions by county governments. Requiring all bidders to scrupulously follow material bidding instructions established by the awarding body ensures the fairness and integrity of the competitive bidding process. Perhaps equally important, the awarding body's strict self-regulation of the bidding process prevents the appearance of impropriety, which in essence prompts unsuccessful bidders to challenge the awarding of such contracts in the courts.

For these reasons, I would affirm that portion of the trial court's judgment which declared the contract between GCRTA and Seuffert void as contrary to law.