JOURNAL ENTRY AND OPINION
{¶ 1} Relators are: several unions who aver that their members have been and continue to be injured by asbestos as a result of work-related exposure; and three individuals who are plaintiffs in various asbestos actions. Respondent is the court of common pleas which hears these asbestos actions.
 {¶ 2} Relators challenge the constitutionality of Am.Sub.H.B. No. 292, 150 Ohio Laws ___ ("Asbestos Litigation Bill" or the "Bill"). The effective date of the Bill was September 2, 2004. Relators complain that H.B. 292 prevents plaintiffs from prosecuting their claims due to several provisions:
a. plaintiffs must meet the "minimum requirements" by presenting evidence of exposure and diagnosis regarding the relevant condition.
b. if plaintiffs do not make a "prima facie" showing by filing a "written report and supporting test results" establishing the "minimum requirements," the trial court may "administratively dismiss" the case.
c. plaintiffs must demonstrate "actual fraud" in order to maintain a claim against a shareholder.
Relators challenge the Asbestos Litigation Bill as unconstitutional under the Ohio Constitution because:
1. The Bill expressly authorizes that application of the provisions summarized above both to claims that were pending on or which accrued prior to the September 2, 2004 effective date of the Bill;
2. The Bill violates the Open Courts Provision by depriving relators of a remedy; and
3. The Bill infringes on the Supreme Court's rule-making authority.
 {¶ 3} With respect to asbestos cases which were pending or in which the claim accrued prior to September 2, 2004, relators request that this court issue writs of:
a. mandamus to compel the court of common pleas to prosecute asbestos litigation according to the law as it existed prior to the Asbestos Litigation Bill (that is, to use the "old law");
b. prohibition to prevent the court of common pleas from applying the provisions in the Bill (that is, to prevent the court of common pleas from using the "new law"); and
c. procedendo compelling the court of common pleas to go forward in all cases using the "old law."
 {¶ 4} This court has granted the motions to intervene filed by: the Attorney General of the State of Ohio; and several parties who state that they are defendants in various asbestos cases. This court also granted the motions for leave to file amicus brief filed by the Council of Smaller Enterprises and others as well as the Ohio Association of Civil Trial Attorneys.
 {¶ 5} The following dispositive motions are pending:
1. Relators' motion for summary judgment;
2. Respondent's motion to dismiss;
3. Intervenor attorney general's motion for judgment on the pleadings;
4. Intervenor defendant companies' motion for judgment on the pleadings or, in the alternative, to dismiss; and
5. Intervenor Norfolk Southern, et al. motion to dismiss or, in the alternative, for judgment on the pleadings.
Additionally, intervenor Bondex International, Inc. did not file a dispositive motion.
 {¶ 6} For the reasons stated below, by separate entries, we:
a. deny relators' motion for summary judgment;
b. grant the dispositive motions of respondent and intervenors; and
c. sua sponte vacate the entry granting the motion to intervene of intervenor Bondex International, Inc.
I. THE ASBESTOS LITIGATION BILL
 {¶ 7} In Am.Sub.H.B. No. 292 § 3(B), the general assembly articulated the purpose of the Bill.
"In enacting sections 2307.91 to 2307.98 of the Revised Code, it is the intent of the General Assembly to: (1) give priority to those asbestos claimants who can demonstrate actual physical harm or illness caused by exposure to asbestos; (2) fully preserve the rights of claimants who were exposed to asbestos to pursue compensation should those claimants become impaired in the future as a result of such exposure; (3) enhance the ability of the state's judicial systems and federal judicial systems to supervise and control litigation and asbestos-related bankruptcy proceedings; and (4) conserve the scarce resources of the defendants to allow compensation of cancer victims and others who are physically impaired by exposure to asbestos while securing the right to similar compensation for those who may suffer physical impairment in the future."
Relators constitutional challenges are:
1. The Bill's application both to claims that were pending on or which accrued prior to the September 2, 2004 effective date of the Bill violates Section 28, Article II, Ohio Constitution which provides, in part: "The general assembly shall have no power to pass retroactive laws * * *.";
2. The Bill deprives relators of a remedy and, therefore, violates the Open Courts Provision, Section 16, Article I, Ohio Constitution, which provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."; and
3. The Bill infringes on the Supreme Court's rule-making authority under Section 5(B), Article IV which provides, in part: "The supreme court shall prescribe rules governing practice and procedure in all courts of the state * * *."
We need not reach these constitutional issues, however. We hold that original actions in mandamus, prohibition and procedendo are not the appropriate remedy for relators to assert their constitutional claims.
II. ORIGINAL ACTIONS
 {¶ 8} In support of their claim that relief in mandamus, prohibition and procedendo are the appropriate remedy relators rely extensively on State ex rel. Ohio Academy of Trial Lawyersv. Sheward (1999), 86 Ohio St.3d 451, 1999-Ohio-123,715 N.E.2d 1062, an original action filed in the Supreme Court. InSheward, the relators sought relief in mandamus and prohibition against six common pleas court judges and challenged the constitutionality of Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 3867, "the latest effort at civil justice reform and, to be sure, the most comprehensive and multifarious legislative measure thus far." Id. at 458. "[The r]elators' primary claim is that Am.Sub.H.B. No. 350 constitutes an improper legislative usurpation of judicial power, and an intrusion upon the exclusive authority of the judiciary, in violation of Section 32, Article II, and Sections 1, 5(A)(1) and (B), Article IV, of the Ohio Constitution." Id. at 451. The relators requested the following relief:
"(1) a writ of prohibition preventing respondents from implementing those provisions in Am.Sub.H.B. No. 350 that intrude on judicial authority, (2) a writ of mandamus ordering respondents to follow "the rules of civil procedure, the rules of evidence, the relevant constitutional decisions and common-law [causes of action] * * *, notwithstanding contrary provisions in Am.Sub.H.B. 350," and (3) pursuant to their ancillary claims, an order declaring that Am.Sub.H.B. No. 350 violates the Ohio Constitution and enjoining its implementation."
Id at. 453. The majority in Sheward found Am.Sub.H.B. No. 350 was unconstitutional in toto, and granted the writs of prohibition and mandamus requested by the relators. See alsoState ex rel. Zupancic v. Limbach (1991), 58 Ohio St. 3d 130,568 N.E.2d 1206.
 {¶ 9} Relators contend that Sheward and Zupancic provide a basis for granting relief in this action. Nevertheless, we note that the Sheward majority expressly limited the circumstances in which an original action would be appropriate to challenge the constitutionality of a statute. Additionally, two more recent decisions of the Supreme Court of Ohio suggest that the Supreme Court has reexamined the holdings of Sheward and Zupancic.
 {¶ 10} "Constitutional challenges to legislation are generally resolved in an action in a common pleas court rather than in an extraordinary writ action filed here. See State exrel. Gaydosh v. Twinsburg (2001), 93 Ohio St.3d 576, 579, 2001-Ohio-1613, 757 N.E.2d 357." Rammage v. Saros,97 Ohio St.3d 430, 431, 2002-Ohio-6669, at ¶ 11, 780 N.E.2d 278. Not surprisingly, in the majority opinion in Sheward, Justice Resnick observed: "Perhaps the most amorphous and contentious aspect of this litigation involves the question whether relators' claims should even be heard at this juncture." Sheward, at 467. That same question is central to this court's consideration of the pending case.
"It is well established that before an Ohio court can consider the merits of a legal claim, the person seeking relief must establish standing to sue."
* * *
"* * * In order to have standing to attack the constitutionality of a legislative enactment, the private litigant must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury."
Id. at 469-470 (citations deleted). The individual relators assert that they have a private right to pursue this action.
 {¶ 11} Additionally, all of the relators contend that they have standing to bring this case as a public action. "[The Supreme Court of Ohio] has long taken the position that when the issues sought to be litigated are of great importance and interest to the public, they may be resolved in a form of action that involves no rights or obligations peculiar to named parties." Id. at 471. Yet, the Supreme Court in Sheward,
expressly limited the applicability of the public action exception.
"This Court Will Entertain a Public Action in the Rare and Extraordinary Case Where Relators Challenge the Constitutionality of a Legislative Enactment on Grounds that It Operates, Directly and Broadly, to Divest the Courts of Judicial Power"
Id. at 467 (preamble to Part III of the majority opinion). The majority in Sheward emphasized that the public actionexception was to be just that — an exception.
"We have not proposed, as the dissent suggests, that our citizens have standing as such to challenge the constitutionality of every legislative enactment that allegedly violates the doctrine of separation of powers or exceeds legislative authority. We have expressed quite clearly in our preamble to the issue of relators' standing that this court will entertain a public action only "in the rare and extraordinary case" where the challenged statute operates, "directly and broadly, todivest the courts of judicial power." (Emphasis added.) We will not entertain a public action to review the constitutionality of a legislative enactment unless it is of a magnitude and scope comparable to that of Am.Sub.H.B. No. 350."
Id. at 503-504.
 {¶ 12} Am.Sub.H.B. No. 350 would have had a direct impact on the law of tort and other civil actions. In Sheward, the majority emphasized that the act's "vast scope and diversity," Id. at 513, weighed heavily in favor of permitting the public action exception to standing.
 {¶ 13} We agree with respondent and intervenors, however, that Am.Sub.H.B. 292 lacks that scope and diversity. Rather than affecting the entirety of tort law, Am.Sub.H.B. 292 affects only claims by those asserting that they were injured by asbestos as a result of work-related exposure and the constitutional challenge asserted in this action is limited to those whose claims were pending on or accrued prior to September 2, 2004.
 {¶ 14} Regardless, we cannot conclude that Am.Sub.H.B. 292 is of the magnitude and scope of Am.Sub.H.B. 350 or of the act challenged in State ex rel. Ohio AFL-CIO v. Ohio Bur. ofWorkers' Comp., 97 Ohio St. 3d 504, 2002-Ohio-6717,780 N.E.2d 981 ("* * * [U]under H.B. 122, every Ohio worker injured on the job must submit to an employer-requested chemical test, regardless of whether the employer has any reason to believe that the injury was caused by the employee's intoxication or use of controlled substances. Failure to submit to a breath, blood, or urine test creates a rebuttable presumption against the employee that use of drugs or alcohol caused the injury." Id at ¶ 7). "As the statutory scheme at issue in Sheward affected every tort claim filed in Ohio, H.B. 122 affects every injured worker who seeks to participate in the workers' compensation system." OhioAFL-CIO v. Ohio Bur. of Workers' Comp., supra, at ¶ 12.
 {¶ 15} By contrast, in State ex rel. Ohio AFL-CIO v. Taft,
Franklin App. No. 03AP-337, 2003-Ohio-6828, the Tenth District Court of Appeals adopted a magistrate's decision distinguishing the Supreme Court's decision in AFL-CIO v. Bur. of Workers'Comp. from the circumstance before it, in which only state employees who must be licensed attorneys were excluded from the definition of "public employee" under the collective bargaining law. The Tenth District denied a request for writs of mandamus and prohibition to compel various state officials to not apply R.C. Sections 4117.01(C)(19) and 4117.14(C)(6) and to declare these statutes to be unconstitutional. In reaching this conclusion, the Tenth District observed:
"In both Sheward and AFL-CIO, the Ohio Supreme Court emphasized the widespread effect of the legislation at issue, and found mandamus to be an appropriate way to address the constitutionality of the statutes concerned, given the public rights at issue. In Sheward, the court found that every plaintiff in a tort action was affected by the legislation and, in AFL-CIO, the court found every injured employee was potentially affected by the legislation. * * *
* * *
Here, the only individuals affected by the amended statutes are those employees of the state and its agencies who are required to be licensed attorneys in order to perform their job duties, and, thus, this case is not one of those "rare cases" that present "exceptional circumstances that demand early resolution." Rather, we find this case subject to the rule in State ex rel. Grendellv. Davidson (1999), 86 Ohio St.3d 629, 634, 1999-Ohio-130,716 N.E.2d 704, [* * *.]"
Ohio AFL-CIO v. Taft, supra, at ¶ 5-6.
 {¶ 16} Similarly, the Asbestos Litigation Bill affects a specific, limited group of people. We find the reasoning of the Tenth District in Ohio AFL-CIO v. Taft, supra, to be persuasive. That is, by considering who is affected by the challenged legislation, we can determine the applicability of the authorities upon which relators rely. That consideration requires the conclusion that the magnitude and scope of Am.Sub.H.B. 292 is not comparable to that of the legislation in Sheward or that inOhio AFL-CIO v. Ohio Bur. of Workers' Comp.
 {¶ 17} We must distinguish Sheward on another ground as well. An important consideration resulting in the Supreme Court's authorizing the use of the public action exception in Sheward
was the fact that, in Am.Sub.H.B. No. 350
"the General Assembly ha[d], in several places, reenacted legislation which this court ha[d] already determined to be unconstitutional and/or in conflict with the rules we have prescribed pursuant to Section 5(B), Article IV of the Ohio Constitution governing practice and procedure for Ohio courts."
Id. at 474.
 {¶ 18} Certainly, there is no contention in this action that Am.Sub.H.B. No. 292 is a reenactment of provisions which courts previously declared to be unconstitutional. Although relators do assert that Am.Sub.H.B. No. 292 is in conflict with various rules promulgated by the Supreme Court, we cannot conclude that Am.Sub.H.B. No. 292 "operates, directly and broadly, to divest the courts of judicial power." Indeed, Am.Sub.H.B. No. 292 reaffirms the authority of the court of common pleas to make determinations regarding constitutionality in R.C. 2307.93(A)(3).
"(a) For any cause of action that arises before the effective date of this section, the provisions set forth in divisions (B), (C), and (D) of section 2307.92 [minimum medical requirements for tort action alleging asbestos claim] of the Revised Code are to be applied unless the court that has jurisdiction over the case finds both of the following:
(i) A substantive right of a party to the case has been impaired.
(ii) That impairment is otherwise in violation of Section 28 of Article II, Ohio Constitution.
(b) If a finding under division (A)(3)(a) of this section is made by the court that has jurisdiction over the case, then the court shall determine whether the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that is in effect prior to the effective date of this section.
(c) If the court that has jurisdiction of the case finds that the plaintiff has failed to provide sufficient evidence to support the plaintiff's cause of action or right to relief under division (A)(3)(b) of this section, the court shall administratively dismiss the plaintiff's claim without prejudice. The court shall maintain its jurisdiction over any case that is administratively dismissed under this division. Any plaintiff whose case has been administratively dismissed under this division may move to reinstate the plaintiff's case if the plaintiff provides sufficient evidence to support the plaintiff's cause of action or the right to relief under the law that was in effect when the plaintiff's cause of action arose."
We cannot, therefore, conclude that Am.Sub.H.B. 292 "operates, directly and broadly, to divest the courts of judicial power."
 {¶ 19} In light of the considerably limited scope of Am.Sub.H.B. 292, we hold that — to the extent that relators assert that this action qualifies for the public action exception — relators lack standing to attack the constitutionality of Am.Sub.H.B. 292. Because relators acknowledge that the union relators have no personal or private right to secure judicial review, we hold that the union relators lack standing to prosecute this action.
A. MANDAMUS
 {¶ 20} The fundamental criteria for issuing a writ of mandamus are well-established:
"In order to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State, ex rel. National CityBank v. Bd. of Education (1977), 52 Ohio St. 2d 81,369 N.E.2d 1200."
State ex rel. Harris v. Rhodes (1978), 54 Ohio St. 2d 41, 42,374 N.E.2d 641. Of course, all three of these requirements must be met in order for mandamus to lie. Relief in mandamus should not be issued in doubtful cases. Griffin v. Angelotta, Cuyahoga App. No. 84400, 2004-Ohio-2167, at ¶ 2.
 {¶ 21} In State ex rel. Satow v. Gausse-Milliken,98 Ohio St.3d 479, 2003-Ohio-2074, 786 N.E.2d 1289, the Supreme Court refused to issue a writ of mandamus against various local governmental entities regarding the apportionment and distribution of certain local government funds and revenues despite a challenge to the constitutionality of 2002 Sub.H.B. No. 329.
"* * *, "[I]f the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." State ex rel. Grendell v. Davidson(1999), 86 Ohio St.3d 629, 634, 1999 Ohio 130, 716 N.E.2d 704.
In order to divine the true objects of relators' mandamus action, "we must examine [their] complaint `to see whether it actually seeks to prevent, rather than to compel, official action.'"State ex rel. Cunningham v. Amer Cunningham Co., L.P.A. (2002),94 Ohio St.3d 323, 324, 2002 Ohio 789, 762 N.E.2d 1012, quotingState ex rel. Stamps v. Montgomery Cty. Automatic DataProcessing Bd. (1989), 42 Ohio St.3d 164, 166, 538 N.E.2d 105."
Satow, supra, at ¶ 13. In Satow, the Supreme Court specifically noted that, although the relators characterized the action as seeking a judgment compelling the performance of affirmative duties, the nature of the relief was actually that of declaratory judgment and prohibitory injunction. Id. at ¶ 14.
 {¶ 22} Similarly, in this action, relators insist that this action is not a request for declaratory judgment and prohibitory injunction. Rather, they argue that they could not secure complete relief by declaratory judgment without the addition of amandatory injunction. Relators' arguments notwithstanding, we must conclude that the nature of the relief requested by relators is indeed that of a declaratory judgment and a prohibitory injunction. Relators clearly want a judicial determination that Am.Sub.H.B. 292 is unconstitutional and they request that this court prevent respondent court from acting in accordance with Am.Sub.H.B. 292. That is, relators ask that this court declare that Am.Sub.H.B. 292 is unconstitutional and stop the court of common pleas from implementing the provisions of Am.Sub.H.B. 292. Although relators attempt to characterize their request for relief as one compelling respondent court to apply the "old law," relators have not demonstrated that — in the absence of Am.Sub.H.B. 292 — respondent court would not be authorized (if not required) to apply the "old law."
 {¶ 23} We must hold, therefore, that relators' complaint fails to state a claim in mandamus.
B. PROHIBITION
 {¶ 24} The criteria for the issuance of a writ of prohibition are well-established.
"In order to be entitled to a writ of prohibition, [relator] had to establish that (1) the [respondent] is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is unauthorized by law, and (3) denial of the writ will cause injury to [relator] for which no other adequate remedy in the ordinary course of law exists. State ex rel. White v. Junkin
(1997), 80 Ohio St.3d 335, 336, 686 N.E.2d 267, 268." State exrel. Wright v. Ohio Bur. of Motor Vehicles, 87 Ohio St.3d 184,185, 1999-Ohio-1041, 718 N.E.2d 908.
 {¶ 25} In Wright, supra, the Supreme Court affirmed this court's judgment in State ex rel. Wright v. Registrar, Bur. ofMotor Vehicles (Apr. 29, 1999), Cuyahoga App. No. 76044.
"A two-part test must be employed by this Court in order to determine whether a writ of prohibition should be issued. Stateex rel. East Mfg. Corp. v. Ohio Civ. Rights Comm. (1992),63 Ohio St.3d 179; Dayton Metro. Hous. Auth. v. Dayton HumanRelations Council (1992), 81 Ohio App.3d 436. Initially, we must determine whether the respondent patently and unambiguously lacks jurisdiction to proceed. The second step involves the determination of whether the relator possesses an adequate remedy at law. State ex rel. Natalina Food Co. v. Ohio Civ. RightsComm. (1990), 55 Ohio St.3d 98."
Case No. 76044 at 3, 5.
 {¶ 26} In Sheward, the majority acknowledged that "a writ of prohibition will not lie to prevent a court of common pleas from determining its own jurisdiction or rendering an anticipated erroneous judgment." Sheward, supra, at 474 (citations deleted). The Sheward majority observed that the issue in the case before it was not the authority of the court of common pleas to determine its own jurisdiction but rather the reenactment of provisions which courts previously declared to be unconstitutional. Sheward is not, therefore, controlling authority. Rather, we must rely on the analysis customarily applied in prohibition cases.
 {¶ 27} Obviously, respondent court exercises judicial power. Just as clearly, however, respondent is not patently and unambiguously without jurisdiction to decide whether it has the authority to determine whether Am.Sub.H.B. 292 is constitutional.
"Prohibition will not lie unless it clearly appears that the court has no jurisdiction over the cause that it is attempting to adjudicate or the court is about to exceed its jurisdiction.State ex rel. Ellis v. McCabe (1941), 138 Ohio St. 417,35 N.E.2d 571, paragraph three of the syllabus. "The writ will not issue to prevent an erroneous judgment, or to serve the purpose of appeal, or to correct mistakes of the lower court in deciding questions within its jurisdiction." State ex rel. Sparto v.Juvenile Court of Darke County (1950), 153 Ohio St. 64, 65,90 N.E.2d 598. Furthermore, it should be used with great caution and not issue in a doubtful case. State ex rel. Merion v. TuscarawasCty. Court of Common Pleas (1940), 137 Ohio St. 273,28 N.E.2d 641; Reiss v. Columbus Municipal Court (App. 1956), 76 Ohio L. Abs. 141, 145 N.E.2d 447."
State ex rel. Left Fork Mining Co. v. Fuerst (Dec. 21, 1999), Cuyahoga App. No. 77405, at 6.
 {¶ 28} In this action, the propriety of prohibition is, at best, doubtful. Respondent court clearly has the authority to determine the constitutionality of Am.Sub.H.B. 292. We cannot, therefore, conclude that respondent is patently and unambiguously without jurisdiction to act. Indeed, we cannot conclude that respondent is without authority to proceed in the cases pending before it which are governed by the Asbestos Litigation Bill.
 {¶ 29} We must hold, therefore, that relators' complaint fails to state a claim in prohibition.
C. PROCEDENDO
 {¶ 30} The criteria for procedendo are well-established.
"As was recognized in State, ex rel. Davey, v. Owen (1937),133 Ohio St. 96, 106 [10 O.O. 102],"[t]he writ of procedendo is merely an order from a court of superior jurisdiction to one of inferior jurisdiction to proceed to judgment. It does not in any case attempt to control the inferior court as to what that judgment should be. * * *" Accord State, ex rel. Federated Dept.Stores, Inc., v. Brown (1956), 165 Ohio St. 521, 525
[60 O.O. 486]. It is well-settled that the writ of procedendo will not issue for the purpose of controlling or interfering with ordinary court procedure, State, ex rel. Cochran, v. Quillin (1969),20 Ohio St. 2d 6 [49 O.O. 2d 53], nor will the writ issue where an adequate remedy exists in the ordinary course of the law. State,ex rel. St. Sava, v. Riley (1973), 36 Ohio St. 2d 171, 174
[65 O.O.2d 395]; State, ex rel. Ruggiero, v. Common Pleas Court
(1963), 175 Ohio St. 361 [25 O.O.2d 258].
State ex rel. Utley v. Abruzzo (1985), 17 Ohio St.3d 203,204, 478 N.E.2d 789.
 {¶ 31} As noted above, however, relators request that this court issue a writ of procedendo compelling the court of common pleas to go forward in all cases using the "old law." Were this court to grant the relief requested by relators, we would have to tell respondent court what the judgment should be in the underlying case. Utley unequivocally states, however, that procedendo may not be used to dictate the judgment of the respondent. Because relators request that this court compel respondent to reach a specific outcome, relators' complaint fails to state a claim in procedendo.
D. ADEQUATE REMEDY
 {¶ 32} As noted above, mandamus and procedendo do not lie if there is an adequate remedy and prohibition does not lie as well unless the respondent is patently and unambiguously without jurisdiction to act. See, e.g.: Griffin, supra, (mandamus);State ex rel. Keenan v. Calabrese (1994), 69 Ohio St.3d 176,631 N.E.2d 119 (prohibition); State ex rel. St. Sava SerbianOrthodox Church v. Riley (1973), 36 Ohio St.2d 171,305 N.E.2d 808 (prohibition). We have already determined that respondent has the authority to consider the constitutionality of the Bill. As a consequence, in order to maintain any of these original actions, relators must demonstrate that there is no other adequate remedy.
 {¶ 33} A declaratory judgment action under R.C. 2721.03 would permit all relators to seek a judicial determination of the constitutionality of the statutory provisions at issue in this action. We have already determined that the real objects sought by this action are a declaratory judgment and a prohibitory injunction. Just as was the case in Satow, supra, seeking a declaratory judgment and a prohibitory injunction would provide all relators with an adequate remedy and the availability of a declaratory judgment and a prohibitory injunction as a remedy requires that we dismiss this action with respect to the claims of all relators. Satow, at ¶ 22.
 {¶ 34} Additionally, the individual relators have an adequate remedy by way of appeal. "The proposition that where a right of appeal exists there is an adequate remedy at law is too well established to require citation of authorities." Kendrick v.Masheter (1964), 176 Ohio St. 232, 233, 199 N.E.2d 13.
"Where a constitutional process of appeal has been legislatively provided, the sole fact that pursuing such process would encompass more delay and inconvenience than seeking a writ of mandamus is insufficient to prevent the process from constituting a plain and adequate remedy in the ordinary course of the law. (State, ex rel. Kronenberger-Fodor Co., v. Parma,34 Ohio St. 2d 222 [63 O.O.2d 362], syllabus approved and followed.)"
State ex rel. Willis v. Sheboy (1983), 6 Ohio St.3d 167,451 N.E.2d 1200, paragraph one of the syllabus.
 {¶ 35} R.C. 2505.02 defines final orders. R.C. 2505.02(B) provides in part:
"An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
* * *
(4) An order that grants or denies a provisional remedy and to which both of the following apply:
(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action."
The general assembly expanded the definition of "provisional remedy" to include certain aspects of the Asbestos Litigation Bill.
""Provisional remedy" means a proceeding ancillary to an action, including, but not limited to, a proceeding for a preliminary injunction, attachment, discovery of privileged matter, suppression of evidence, a prima-facie showing pursuant to section 2307.85 or 2307.86 of the Revised Code, a prima-facie showing pursuant to section 2307.92 of the Revised Code, or a finding made pursuant to division (A)(3) of section 2307.93 of the Revised Code."
R.C. 2505.03(A).
 {¶ 36} We recognize that the courts of appeals, in the exercise of their appellate jurisdiction, must determine whether rulings by trial courts applying various provisions of the Bill are final appealable orders. Although we do not decide this issue at this time, we may not presume that a trial court's rulings under R.C. 2307.92 and 2307.93(A) are not final and appealable in the absence of controlling authority to that effect. As a consequence, we must hold that the individual relators have an adequate remedy by way of an appeal.
III. CONCLUSION
 {¶ 37} Relators' request for relief in this action is rooted in the holding of Sheward. In two cases decided afterSheward, however, the Supreme Court has either come to the opposite conclusion, Satow, supra, or distinguished Sheward
in such a way as to make the applicability of Sheward in this action questionable, State ex rel. Ohio Civ. Serv. Emp. Assn. v.State Emp. Relations Bd., 104 Ohio St.3d 122, 2004-Ohio-6363,818 N.E.2d 688.
 {¶ 38} As was discussed above, the Supreme Court in Satow
refused to grant relief in mandamus against various local governmental entities regarding the apportionment and distribution of certain local government funds and revenues despite a challenge to the constitutionality of 2002 Sub.H.B. No. 329. Rather, the Supreme Court held that relators were actually seeking declaratory judgment that Sub.H.B. No. 329 was unconstitutional and a prohibitory injunction preventing the respondents from applying Sub.H.B. No. 329.
 {¶ 39} In State ex rel. Ohio Civ. Serv. Emp. Assn. v. StateEmp. Relations Bd., 104 Ohio St.3d 122, 2004-Ohio-6363,818 N.E.2d 688 ("OCSEA"), the Supreme Court affirmed the judgment of the court of appeals granting a writ of mandamus finding that an amendment to R.C. 3318.31 violated the one-subject rule of the Ohio Constitution. In reaching that decision, however, Chief Justice Moyer — writing for the OCSEA majority — distinguishedSheward by various references to his own dissent in Sheward.
"The facts in the case at bar, however, are distinguishable from the facts in Sheward. In that case, relators had no "true dispute, or controversy, with the individual common pleas judges they [had] named as respondents." Id., 86 Ohio St.3d at 525,715 N.E.2d 1062 (Moyer, C.J., dissenting). Nor did the relators inSheward allege that the respondents had failed to comply with any duty required of them by law. Id. They instead sought a writ ordering Ohio judges to rule that the entirety of comprehensive legislation contained in Am.Sub.H.B. No. 350 was unconstitutional, both as to existing cases and cases that might arise in the future." "In the instant case, specific individuals employed by the Ohio School Funding Commission had been affected by the refusal of SERB to entertain their petitions to be recognized as members of a collective-bargaining unit. Unlike inSheward, the relator presented a claim that a specific public entity had failed to perform its clear legal duty to consider specific petitions. The case at bar presents far more than only a "`general and abstract question, whether an act of the legislature be unconstitutional.'" Id., 86 Ohio St.3d at 525,715 N.E.2d 1062 (Moyer, C.J., dissenting), quoting Foster v. WoodCty. Commrs. (1859), 9 Ohio St. 540, 543, 1859 WL 29."
OCSEA, at ¶ 18-19.
 {¶ 40} It is significant, in our judgment, that the majority opinion in OCSEA characterizes Sheward as a case in which the relators had no true dispute or controversy with the respondent judges in that case and as a case dealing with the general and abstract question of whether a legislative act is unconstitutional by quoting from the dissent in Sheward. The dissent in Sheward would have denied relief to the relators.Satow and OCSEA, therefore, require us to consider whether the Supreme Court has already begun to limit the applicability ofSheward. In any event, we must view the propriety of granting relief in mandamus and prohibition as doubtful in light of these more recent decisions. See Griffin, supra, and Left ForkMining, supra.
 {¶ 41} As evidenced by the discussion above, relators are not entitled to judgment as a matter of law. Civ.R. 56(C). With respect to the dispositive motions filed by respondent and intervenors, the standards for determining motions to dismiss and/or motions for judgment on the pleadings are well-established
"Civ. R. 12(C) permits consideration of the complaint and answer, but a Civ.R. 12(B)(6) motion must be judged on the face of the complaint alone. Burnside v. Leimbach (1991),71 Ohio App. 3d 399, 402-403, 594 N.E.2d 60, 62. Third, the standards for Civ. R. 12(B)(6) and (C) motions are similar, n2 but Civ.R. 12(C) motions are specifically for resolving questions of law,Peterson v. Teodosio (1973), 34 Ohio St. 2d 161, 166, 63 Ohio Op. 2d 262, 264, 297 N.E.2d 113, 117. Under Civ. R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief.Lin, supra, 84 Ohio App. 3d at 99, 616 N.E.2d at 521. Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. Burnside, supra, 71 Ohio App. 3d at 403,594 N.E.2d at 62.
"n2 Under Civ.R. 12(B)(6), a complaint may be dismissed only if the court (1) accepts all factual allegations as true, (2) draws all reasonable inferences in favor of the nonmoving party, and (3) still concludes beyond doubt from the complaint that no provable set of facts warrants relief.
State ex rel. Edwards, supra, 72 Ohio St. 3d at 108,647 N.E.2d at 802; State ex rel. Williams Ford Sales, Inc. v.Connor (1995), 72 Ohio St. 3d 111, 113, 647 N.E.2d 804, 806."
State ex rel. Midwest Pride IV, Inc. v. Pontious,75 Ohio St.3d 565, 569-570, 1996-Ohio-459, 664 N.E.2d 931. We have accepted the facts in the complaint as true and made all reasonable inferences in favor of relators. In light of the authorities referenced above, however, we must conclude beyond doubt that no provable set of facts warrants relief.
 {¶ 42} Accordingly, by separate entries, we have:
1. Denied relators' motion for summary judgment, Motion No. 364124;
2. Granted respondent's motion to dismiss, Motion No. 363390;
3. Granted intervenor attorney general's motion for judgment on the pleadings, Motion No. 364128;
4. Granted intervenor defendant companies' motion for judgment on the pleadings or, in the alternative, to dismiss, Motion No. 364117;
5. Granted intervenor Norfolk Southern, et al. motion to dismiss or, in the alternative, for judgment on the pleadings, Motion No. 364108; and
6. Sua sponte vacate the entry granting the motion to intervene of Bondex International, Inc., which did not file a dispositive motion, Entry No. 379351.
Relators to pay costs. The clerk is directed to serve upon the parties notice of this judgment and its date of entry upon the journal. Civ.R. 58(B).
Writ denied.
Celebrezze, Jr., P.J., concurs
 McMonagle, J., concurs