[Cite as *Stewart v. Woods Cove II, L.L.C.*, 2017-Ohio-8314.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.    105160

---

# EDDIE L. STEWART, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# WOODS COVE II, L.L.C., ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-855010

**BEFORE:**    Boyle, J., Keough, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**    October 26, 2017

**ATTORNEYS FOR APPELLANTS**

Michael Aten
1719 Coventry Road, #1
Cleveland Heights, Ohio    44118

Gary Cook
17325 Euclid Avenue, Suite 4004
Cleveland, Ohio    44112


**ATTORNEYS FOR APPELLEES**

**For Woods Cove II, L.L.C., et al.**

Tim L. Collins
Joseph Gutkoski
Collins & Scanlon, L.L.P.
3300 Terminal Tower
50 Public Square
Cleveland, Ohio    44113


**For Christopher W. Murray**

Awatef Assad
Assistant Director of Law
Robin M. Wilson
Chief Trial Counsel
Cuyahoga County Law Department
2079 East 9th Street, 7th Floor
Cleveland, Ohio    44115

MARY J. BOYLE, J.:

{¶1}    Plaintiffs-appellants, Eddie Stewart, Leslie Brazil, and Charles Patton (collectively "Stewart"), appeal from the trial court's judgment granting defendants-appellees, Woods Cove II, L.L.C., Woods Cove III, L.L.C. (collectively "Woods Cove"), and Cuyahoga County Treasurer Christopher Murray's ("Treasurer"), motions to dismiss Stewart's second amended class action complaint for declaratory and injunctive relief and for damages.

{¶2}    For the reasons that follow, we reverse the trial court's judgment and remand the matter for further proceedings.

I.    Facts and Procedural History

{¶3}    Stewart filed his second amended class action complaint for declaratory judgment, permanent injunction, writ of mandamus, and for damages ("second amended complaint") against Woods Cove and the Treasurer.[1]   His claims concern Ohio's tax certificate legislation, R.C. 5721.30 through 5721.46, and specifically, the provisions that permit the Treasurer to sell tax certificates for real properties to third-party investors like Woods Cove.   Stewart brought his claims on behalf of "all persons in the State of Ohio whose property tax delinquencies have been certified by [the] Treasurer, and whose certificates were sold to [Woods Cove] by agreement with the Treasurer."

{¶4}    According to Stewart, from April 20, 2012 through May 10, 2013, and

---

[1]    Stewart filed an original complaint and a first amended complaint.   Subsequently, with leave of court, he filed his second amended complaint.

from September 9, 2013 through September 9, 2014, Woods Cove "was the exclusive purchaser of tax lien certificates from the Treasurer" pursuant to two tax certificate purchase/sale agreements. Stewart attached a copy of the tax certificate purchase/sale agreements to his second amended complaint.

**{¶5}** Stewart claimed that during the stated time period the Treasurer sold tax lien certificates to Woods Cove for the properties owned by Stewart, Patton, and Brazil. Stewart attached the applicable tax certificates to his second amended complaint. Stewart further alleged that the delinquent property tax certificates sold to Woods Cove pursuant to the tax certificate purchase/sale agreements "were disproportionately comprised of properties located in communities having significantly higher concentrations of racial minority populations than Cuyahoga County as a whole." He also asserted that Woods Cove entered into agreements with taxpayers for repayment under the tax lien certificates that resulted in interest rates in excess of the 18 percent limit imposed by the tax certificate statute.

**{¶6}** As a result of the Treasurer and Woods Cove's agreements and their conduct related to the agreements, Stewart alleged that he was subject to:

(1) tax policy effectively legislated ad hoc by the executive branch of government and private entities;

(2) the unconstitutional taking of properties for private benefit;

(3) the denial of equal protection of law based upon the Treasurer's racial selection of properties being sold to third-party investors like Woods Cove;

(4) the deprivation of due process because the Treasurer delegates the required notice of redemption rights under the tax certificate statute to

third-party investors like Woods Cove;

(5) unfair, deceptive, and unconscionable practices as a result of the tax lien certificate purchasers' negotiations of repayment agreements with interest and fees in excess of statutory amounts; and

(6) unlawful and discriminatory credit practices because of the disproportionate effect upon racial minorities.

{¶7} As such, Stewart's second amended complaint sought a declaratory judgment that the tax lien statute was unconstitutional pursuant to the Takings Cause, Article I, Section 19 of the Ohio Constitution and the Fifth Amendment of the United States Constitution, and the Nondelegation Clause, Article II, Section 1 of the Ohio Constitution and Article I, Section 1 of the United States Constitution. He also requested a declaratory judgment that the tax certificate sale/purchase agreements were unconstitutional pursuant to the Equal Protection Clause, Article I, Section 2 of the Ohio Constitution, the Due Process Clause, Fourteenth Amendment of the United States Constitution, and in violation of Ohio's competitive bidding statute, R.C. 307.86. Stewart further alleged causes of action under 42 U.S.C. 1983, the Ohio Consumer Sales Practices Act, the Ohio Civil Rights statute, and the Truth in Lending Act, and he sought a writ of mandamus compelling the Treasurer to exercise his authority under the tax certificate statute in compliance with the constitutional and statutory guidelines.

{¶8} In response to the second amended complaint, Woods Cove filed a motion to dismiss.[2] Woods Cove argued that Stewart's claims should be dismissed because

---

[2] Prior to filing its motion to dismiss, Woods Cove filed a notice of removal to the United States District Court, Northern District of Ohio. The Treasurer, however, did not consent to the

they failed to present a "real controversy or justiciable issue between the parties." Specifically, Woods Cove claimed that Stewart's challenges to R.C. Chapter 5721 and the tax certificate sale/purchase agreements were not ripe for review because the allegations simply stated that Woods Cove "purchased tax certificates regarding their properties" and failed to allege that Stewart had "actually been deprived of [his] property." Woods Cove also argued that the second amended complaint should be dismissed because Stewart failed to serve a copy upon the attorney general; he failed to properly allege a violation under 42 U.S.C. 1983; he lacked standing to pursue claims under the Ohio Consumer Sales Practices Act and Civil Rights Act; the mandamus action was improperly disguised as a claim for declaratory judgment and injunction; and he failed to properly allege a claim under the Truth in Lending Act.

{¶9} The Treasurer also filed a motion to dismiss the second amended complaint, which joined in and incorporated the motion to dismiss filed by Woods Cove. The Treasurer further argued that Stewart's claims under the Ohio Constitution failed because there is no private right of action for such claims, and the trial court lacked subject matter jurisdiction because Stewart failed to name the attorney general as a party.

{¶10} Stewart filed oppositions to the motions to dismiss, arguing that his claims presented a justiciable controversy. Stewart claimed that the validity of the forfeiture provision of the tax certificate statute was ripe for review because when the Treasurer sold the tax certificates to Woods Cove, a final decision "was reached" with respect to

_____

removal, and the case was remanded to the Cuyahoga County Court of Common Pleas.

the properties. Stewart also argued that the Treasurer's discretion to "arbitrarily select from among parcels" to sell and to be subjected to "increased interest and additional costs and fees * * * is in fact full, entire, complete, and absolute." And Stewart asserted that he properly alleged claims for declaratory judgment and violations under 42 U.S.C. 1983 and the Truth in Lending Act; that any procedural defect to serve the attorney general was curable; and that he had standing to assert claims under the Ohio Consumer Sales Practices Act and the Ohio Civil Rights Act.

{¶11} After considering the motions to dismiss, the trial court granted Woods Cove and the Treasurer's motions to dismiss stating:

> Motion to dismiss of Defendant Cuyahoga County Treasurer W. Christopher Murray II, filed 05/26/2016, is granted. Motion to dismiss of Defendants Woods Cove II, LLC and Woods Cove III, LLC, filed 05/25/02016, is granted. While plaintiffs are parties who have properties encumbered by tax certificate liens, they have not lost their properties to tax certificate forfeiture orders recently. All of these constitutional arguments raised by plaintiffs can be raised if a foreclosure case is filed against these plaintiffs. The court agrees with the defendants['] argument that the plaintiffs' claims are premature. Until a tax foreclosure complaint is filed by a tax certificate holder, like Woods Cove II, III, or IV, the injury or harm to the property owner's interests seems speculative and premature.

{¶12} It is from this judgment that Stewart appeals. He asserts the following two assignments of error for our review:

1. The trial court erred in granting the motion to dismiss of defendant-appellee W. Christopher Murray II, Cuyahoga County Treasurer.

2. The trial court erred in granting the motion to dismiss of defendants-appellees Woods Cove II, L.L.C. and Woods Cove III, L.L.C.

## II.    Law and Analysis

### A.    Standard of Review

{¶13} Ohio courts apply an abuse of discretion standard when reviewing a trial court's dismissal of a declaratory judgment claim as not justiciable. *William Powell Co. v. OneBeacon Ins. Co.,* 1st Dist. Hamilton No. C-160291, 2016-Ohio-8124, ¶ 47, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13. Otherwise, an appellate court conducts a de novo review of a trial court's ruling on a Civ.R. 12(B)(6) motion to dismiss. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶14} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). In deciding whether a complaint should be dismissed pursuant to Civ.R. 12(B)(6), the court's review is limited to the four corners of the complaint along with any documents properly attached to or incorporated within the complaint. *Glazer v. Chase Home Fin. L.L.C.,* 8th Dist. Cuyahoga Nos. 99736 and 99875, 2013-Ohio-5589, ¶ 38. When a Civ.R. 12(B)(6) motion to dismiss presents matters outside the pleadings, the trial court may either exclude the extraneous matter from its consideration or treat the motion as one for summary judgment. *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 10th Dist. Franklin No. 12AP-987, 2013-Ohio-4057, ¶ 19, citing *Powell v. Vorys, Sater, Seymour & Pease*, 131 Ohio App.3d 681, 723 N.E.2d 596 (10th Dist.1998). A

trial court may not, sua sponte, convert a Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment and dispose of it without giving notice to the parties of its intent to do so. *Id.* To do so constitutes reversible error. *Id.*

{¶15} In ruling on a motion to dismiss, the court accepts as true all the material factual allegations of the complaint and construes all reasonable inferences to be drawn from those facts in favor of the nonmoving party. *Brown v. Carlton Harley-Davidson, Inc.*, 8th Dist. Cuyahoga No. 99761, 2013-Ohio-4047, ¶ 12.

{¶16} To prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his or her claims that would entitle the plaintiff to relief. *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus. If there is "a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *High St. Properties, L.L.C. v. Cleveland*, 8th Dist. Cuyahoga No. 101585, 2015-Ohio-1451, ¶ 16, citing *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991). "A court cannot dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail." *Bono v. McCutcheon,* 2d Dist. Clark No. 2004CA23, 2005-Ohio-299, ¶ 8, citing *v. WLW Jacor Communications, Inc.*, 92 Ohio App.3d 232, 234, 634 N.E.2d 697 (1st Dist.1994).

{¶17} Because Ohio remains a notice pleading jurisdiction, this court has stated that "few complaints fail to meet the liberal [pleading] standards of Rule 8 and become subject to dismissal," and that "the motion to dismiss is viewed with disfavor and should

rarely be granted." *Tuleta v. Med. Mut. of Ohio,* 8th Dist. Cuyahoga No. 100050, 2014-Ohio-396, ¶ 15, citing *Slife v. Kundtz Properties, Inc.*, 40 Ohio App.2d 179, 182, 318 N.E.2d 557 (8th Dist.1974).

**B.      Real and justiciable controversy between the parties**

{¶18} Stewart's two assignments of error challenge the trial court's dismissal of his second amended complaint.   Therefore, we will consider both assignments of error together.

{¶19} Stewart argues that the trial court improperly determined that his claims were not ripe for adjudication because foreclosure actions had not been filed.   In support of this argument, Stewart claims that the trial court failed to exclude evidence outside of the complaint and failed to provide notice to the parties that it was going to consider such evidence and, thus, the trial court improperly treated the motions to dismiss as motions for summary judgment.   Stewart also argues that the sale of the tax certificate, and not the initiation of foreclosure actions, gave rise to the adjudicability of the claims asserted in his second amended complaint.

{¶20} Woods Cove and the Treasurer, however, argue that the trial court properly granted their motions to dismiss because Stewart's claims were not ripe for adjudication because he failed to allege that the properties had been foreclosed upon or forfeited under the tax certificate.   According to Woods Cove and the Treasurer, the mere allegation that the Treasurer had sold tax certificates for the properties was insufficient to trigger a real and justiciable controversy.   They also argue that the trial court properly

dismissed Stewart's claims under 42 U.S.C. 1983, the Ohio Consumer Sales Practices Act, the Ohio Civil Rights Act, the Truth in Lending Act, and for mandamus.

**{¶21}** The Ohio Supreme Court has interpreted a "justiciable matter" to mean the existence of an actual controversy, a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.2d 535, 542, 660 N.E.2d 458 (1996). In order for a justiciable question to exist, the "threat" to a party's position "must be actual and genuine and not merely possible or remote." *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 8th Dist. Cuyahoga No. 100684, 2014-Ohio-2537, ¶ 17, citing *Mid-Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

**{¶22}** Here, we must review the allegations contained in the second amended complaint, along with its attachments, to determine whether Stewart alleged a set of facts that would entitle him to relief.

**{¶23}** All of Stewart's claims in his second amended complaint, whether couched as requests for declaratory judgment, injunction, mandamus, or damages, challenge the validity of Ohio's tax certificate statute, the tax certificate sale/purchase agreements, and Woods Cove and the Treasurer's conduct related to the sale of the tax certificates. Not only does Stewart make specific constitutional and statutory challenges to the tax certificate statute and the tax certificate sale/purchase agreements, but he also claims that he has been damaged by them. For example, Stewart alleged that property owners, like Brazil, Patton, and others similarly situated, suffered harm when Woods Cove purchased

the tax certificates from the Treasurer because the property owners were subjected to an increased interest rate of more than 18 percent if they wanted to redeem their properties. And, according to Stewart's second amended complaint, the manner in which the Treasurer sold the tax certificates to Woods Cove was racially disproportionate.

{¶24} Taking the allegations in the seconded amended complaint as true and construing all reasonable inferences drawn from those allegations in favor of Stewart as we are required to do, we find that it does not appear beyond doubt that Stewart can prove no set of facts entitling him to the relief requested. We cannot say, at this stage of the litigation, that Stewart's claims are premature, speculative, or barred by the ripeness doctrine. We, however, are not commenting on the merits of Stewart's claims. Rather, given the liberal pleading standard and disfavoring of motions to dismiss, we hold that the trial court erred in granting Woods Cove and the Treasurer's motions to dismiss the second amended complaint.

{¶25} We further find that the trial court improperly considered factual evidence not before it when ruling on the motions to dismiss. Specifically, in its judgment, the trial court stated that "[w]hile plaintiffs are parties who have properties encumbered by tax certificate liens, they have not lost their properties to tax certificate forfeiture orders recently." It then based its determination of the ripeness of Stewart's claims on the factual issue of whether foreclosure actions had been brought against the property owners. Thus, without notice to the parties, the trial court effectively considered factual issues outside the pleadings and improperly determined that no foreclosure

actions had been brought against the properties, thereby justifying the dismissal of Stewart's second amended complaint. We find it reversible error for the trial court to have considered extraneous factual matters outside the pleadings without notification to the parties of its intention to do so.

{¶26} Stewart's first and second assignments of error are sustained.

{¶27} Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., DISSENTS WITH
SEPARATE OPINION

KATHLEEN ANN KEOUGH, A.J., DISSENTING:

{¶28} Respectfully, I dissent.

{¶29} First, I disagree with the majority's conclusion that the trial court

considered factual matters outside the pleadings — specifically, that foreclosure actions had not been filed against appellants — and thereby converted the motions to dismiss into a summary judgment motion without notifying the parties that it was doing so. It is apparent that the trial court's conclusion that no foreclosure had yet been filed against appellants was based solely upon appellants' failure to assert in any of their three filed complaints that foreclosure actions had been filed against them. A review of the record demonstrates that appellees did not attach any evidentiary materials to their motions to dismiss; they merely pointed out that appellants' alleged harm was contingent because the complaint did not allege any foreclosure, and that the complaint therefore failed to present a justiciable or real controversy. Appellants' argument on appeal that the trial court impermissibly considered evidence outside the pleadings is nothing more than an attempt to recast their own pleading deficiency as the trial court's error, an argument the majority accepts, apparently without reference to the record. Interestingly, it is *appellants* who impermissibly sought to supplement the record on appeal by attaching new materials that were not part of the trial court record to their appellate brief.

{¶30} Second, even assuming, as the majority concludes, that appellants' claims were not premature (a conclusion with which I disagree), I would find that the trial court properly granted appellees' motions to dismiss because independent, alternative grounds supported dismissal of their claims. These grounds were argued by the Treasurer and Woods Cove in their respective motions to dismiss, and in their briefs on appeal. Appellants do not address any of these issues on appeal, thereby abandoning any

argument against them (the only argument raised by appellants is that their claims were not premature), and the majority does not address any of these alternative bases for dismissal in its opinion, even though its conclusion that appellants' claims were not premature does not render the other bases for dismissal argued by appellees moot. Because we may affirm on other grounds than those reached by the trial court, I would find, as explained below, that the trial court properly granted appellees' motions to dismiss. *State v. Stedman*, 8th Dist. Cuyahoga No. 77334, 2001 Ohio App. LEXIS 4912, *43 (Nov. 1, 2001) ("Affirmance on other grounds is appropriate if those grounds mandate the same result.").

{¶31} Appellants' second amended complaint asserted ten claims:

Count 1 — the tax lien certificate enabling statute violates the Takings Clauses of the Ohio and United States Constitutions;

Count II — the tax lien certificate enabling statute is unconstitutional as an impermissible delegation of legislative authority;

Count III — the tax certificate sale/purchase agreements between the Treasurer and Woods Cove II and Woods Cove III are unconstitutional as violating the Equal Protections Clauses of the Ohio and United States Constitutions;

Count IV — the tax certificate sale/purchase agreements between the Treasurer and Woods Cove are unconstitutional as violative of appellants' procedural due process rights;

Count V — The tax certificate sale/purchase agreements between the Treasurer and Woods Cove were not subject to Ohio's competitive bidding process;

Count VI — violation of 42 U.S.C. § 1983 by virtue of defendants' conduct pursuant to R.C. [Chapter] 5721;

Count VII — violation of Ohio's Consumer Sales Practices Act ("OCSPA") (against Woods Cove only);

Count VIII — violation of Ohio's Civil Rights Statute ("OCRA") (against Woods Cove only);

Count IX — Writ of Mandamus (against the Treasurer only);

Count X — violation of the federal Truth in Lending Act ("TILA") (against Woods Cove only)

**{¶32}** Appellants also sought certification of a class pursuant to Civ.R. 23.

## Count I — Takings Claim

**{¶33}** Count I, the alleged violation of the Takings Clause, fails because appellants failed to adequately plead a takings claim. In *Williamson Cty. Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d (1985), the United States Supreme Court held that a claim for a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations or statute to the property at issue. *Williamson* also held that if a state provides a procedure for seeking compensation for the alleged taking, the property owner cannot claim a violation of the Takings Clause until he has used the procedure and been denied compensation. *Id.*; *State ex rel. Macey v. Byrd*, 8th Dist. Cuyahoga No. 103646, 2016-Ohio-4703, ¶ 21.

**{¶34}** Appellants' second amended complaint alleged that the Treasurer reaches a "final decision" when he sells tax certificates representing delinquent and unpaid property taxes. Appellants did not set forth any factual allegations to assert its legal conclusion that a sale of delinquent and unpaid property taxes constitutes a final decision

to constitute an unlawful taking, nor do they (or the majority) cite to a single case that supports this conclusion.

{¶35} Most importantly, however, in their brief in opposition to Woods Cove's motion to dismiss, appellants conceded that the Treasurer's purported "final decision" to sell the tax certificates is not final at all. Specifically, appellants admitted that after the Treasurer sells the tax certificate, "*absent some independent intervening affirmative act*, such as the election of a property owner to redeem, or the purchase of a foreclosed property at sheriff's auction by a third party, the property is subject to the forfeiture provision of the tax certificate statute." (Emphasis added.) Because, as appellants admitted, the property owner can avoid foreclosure at numerous points during the foreclosure process (e.g., by entering into a payment plan, by paying their delinquent taxes, by redeeming the property) — any of which appellants concede is an intervening event that breaks the causal connection between the sale of the tax certificate and the foreclosure — the Treasurer's sale of the tax certificates cannot constitute a final decision for purposes of a takings claim. Moreover, appellants' assertion that the Treasurer's sale of tax certificates is a final decision ignores the plain language of the statute, which allows the Treasurer to void the sale of a tax certificate for "any reason." R.C. 5721.34. Without a "final decision," appellants failed to adequately plead a takings claim.

{¶36} Furthermore, appellants make no claim in the complaint that they sought and were denied compensation under Ohio law for the alleged unlawful taking of their

property — an essential element of a takings claim. In Ohio, a property owner alleging a physical or regulatory taking must file a mandamus action in state court to compel public authorities to institute appropriation proceedings. Until the state appropriation proceedings are complete and the property owner has been denied just compensation, there is no constitutional injury, and a Takings Clause claim is not ripe. *Cornerstone Developers, Ltd. v. Sugarcreek Twp.,* S.D. Ohio No. 3:5-cv-93, 2015 U.S. Dist. LEXIS 145798, *10-11 (Oct. 27, 2015). Accordingly, appellants' takings claim necessarily fails, and the trial court did not err in dismissing it.

### Count II — Impermissible Delegation of Legislative Authority

**{¶37}** The trial court also properly dismissed Count II of appellants' second amended complaint, which alleged that the tax certificate statute impermissibly delegates legislative authority by virtue of "the plenary power afforded the Treasurer to select parcels for certificate sales and the discretion afforded the tax lien certificate purchaser in entering into repayment agreements with taxpayers and in exercising foreclosure remedies against properties with unpaid delinquencies."

**{¶38}** The long-standing rule on the permissible delegation of legislative authority involves the "distinction between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." *Peachtree Dev. Co.*

*v. Paul*, 67 Ohio St.2d 345, 353, 423 N.E.2d 1087 (1981).

{¶39} Here, the tax certificate statute establishes a statutory framework within which the Treasurer is required to perform. Pursuant to the statute, the county auditor is required to compile a delinquent tax list consisting of all properties on which taxes are delinquent. R.C. 5721.011. After receipt of the delinquent land list, the Treasurer may select properties from the list that he may attempt to transfer by sale of tax certificates, but his discretion to select the properties is expressly limited by the provisions of R.C. 5721.31(A)(1)(a)-(c), which specify which parcels may not be selected for a tax certificate sale.

{¶40} "Plenary power has a well defined legal meaning and significance. It means full, entire, complete, absolute." *Madigan v. Dollar Bldg. & Loan Co.*, 52 Ohio App. 553, 563, 4 N.E.2d 68 (10th Dist.1935). It is readily apparent that the tax certificate statute does not confer "plenary power" to the Treasurer to make the law; it merely confers limited authority as to its execution.

{¶41} In their brief in opposition to appellees' motions to dismiss, in response to appellees' argument that the statute does not give the Treasurer plenary power, appellants argued that the "assessment of taxes" is a legislative responsibility, and that their second amended complaint stated a valid claim based upon the tax certificate statute's impermissible delegation of "such responsibility" to the Treasurer and Woods Cove. The Treasurer does not assess taxes, however. Pursuant to his statutory duty under R.C. Chapters 323 and 5721, the Treasurer is obligated to *collect* delinquent and

unpaid property taxes. Even appellants recognize that the Treasurer does not assess taxes; paragraph six of their second amended complaint alleges that "Defendant W. Christopher Murray II, Cuyahoga County Treasurer is a 'county official' as defined by Chapter 301 et seq. of the Ohio Revised Code and administrator of the office responsible thereunder for *the collection of taxes* in Cuyahoga County * * *." (Emphasis added.)

{¶42} Unsupported legal conclusions are not accepted as true for purposes of a motion to dismiss and are insufficient to withstand such a motion. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193, 532 N.E.2d 753 (1988). "A complaint must be more than bare assertions of legal conclusions." *Vagas v. Hudson*, 9th Dist. Summit No. 24713, 2009-Ohio-6794, ¶ 10. Appellants' claim that the tax certificate statute impermissibly delegates legislative authority is a legal conclusion unsupported by the statute or any other facts. Accordingly, the trial court did not err in dismissing this claim.

### Count III — Equal Protection Clause

{¶43} To state a claim for violation of the Equal Protection Clause, a plaintiff must allege *facts* sufficient to show that persons similarly situated suffered unequal treatment, or that the defendants acted with intent to discriminate against the plaintiff based on his or her membership in a protected class. *Washington v. Davis*, 426 U.S. 229, 239-240, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976);

{¶44} Here, appellants alleged that the tax certificate sale and purchase agreements between Cuyahoga County (through the Treasurer) and Woods Cove resulted

in a disparate impact on African Americans. However, merely alleging disparate impact (a legal conclusion) is not enough. "A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection [between the policy or statute and its alleged disparate impact] cannot make out a prima facie case of disparate impact." *Texas Dept. of Hous. & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. ____, 135 S.Ct. 2507, 2523, 192 L.Ed.2d 514 (2015). Even in *Tuleta v. Med. Mut. of Ohio*, 8th Dist. Cuyahoga No. 100050, 2014-Ohio-396, the case cited by the majority for the proposition that motions to dismiss should rarely be granted, this court recognized that "[a] complaint must allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions," and that a claim must be dismissed where it fails to allege sufficient facts to support the claim. *Id.* at ¶ 12, 46, 56.[3]

{¶45} Here, although appellants' second amended complaint alleges that the tax lien certificate "scheme" permitted by statute has a "disproportionate effect upon racial minorities," it contains no facts whatsoever to support its claim. Despite two amendments to their original complaint and the filing of two briefs in opposition to appellees' motions to dismiss, appellants failed to cite to the trial court any facts whatsoever to support their claims of disparate impact. Accordingly, the trial court did not err in dismissing this claim. *See Gordon v. Davenport*, N.D.Cal. No. C 08-3341 SI,

---

[3]Indeed, in *Tuleta*, this court reversed the trial court's denial of the defendant's motion to dismiss, finding that the plaintiff had failed to set forth sufficient operative facts to support any of his claims. *Id.* at ¶ 41, 46, 50, 56.

2009 U.S. Dist. 9015, *14-16 (Feb. 9, 2009) (dismissing disparate impact claim because "[p]laintiff has not alleged that defendants acted with discriminatory purpose in enacting their rules, nor has he alleged facts sufficient to show that defendants applied the rules to him in a discriminatory manner").

## Count IV --- Procedural Due Process

{¶46} In order to prevail on a procedural due process claim, a plaintiff must *plead* and prove either (1) that he was deprived of property as a result of an established state procedure that itself violates due process rights, or (2) that the defendants deprived him of property pursuant to a random and unauthorized act, and that available state remedies would not be adequate to redress the deprivation of property. *Cikraji v. Messerman*, N.D. Ohio No. 1:13CV2059, 2014 U.S. Dist. LEXIS 90589, *22 (June 30, 2014).

{¶47} Appellants' second amended complaint merely alleged that tax certificates regarding their properties have been sold. The complaint did not allege that appellants have actually been deprived of their property, nor did it contest the underlying taxes as either being paid or not due in the first place. Nor did appellants allege that available state remedies to redress any perceived wrong are inadequate. Consequently, appellants did not adequately plead a procedural due process claim, and the trial court therefore properly dismissed this claim.

## Count V — Competitive Bidding Process

{¶48} In their fifth cause of action, appellants sought a declaratory judgment that the tax certificate sale/purchase agreements are invalid because they were entered into in

violation of R.C. 307.86, Ohio's competitive bidding statute.

{¶49} Appellants were obviously not bidders on the contracts so as to establish standing to sue as unsuccessful bidders. Nevertheless, a taxpayer may prosecute an action to enjoin the execution and performance of a contract on the ground that there was no competitive bidding, in violation of the law. *Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.,* 67 Ohio App.3d 812, 818, 588 N.E.2d 920 (8th Dist.1990). However, a party wishing to bring a taxpayer's action must first make a written request to the municipality's law director to prosecute the action. *Id.* If the law director takes no action, the individual taxpayer may bring the action in his own name. *Id.*

{¶50} Here, appellants' second amended complaint made no allegation that they had made a written demand that Cuyahoga County's law director institute an action seeking declaratory and injunctive relief regarding the tax certificate sale/purchase agreements. Accordingly, they failed to establish that they have standing as taxpayers or otherwise to assert this claim. *Bennett* at 818 (party had no standing as taxpayers where they failed to demand that the city's law director bring suit for declaratory and injunctive relief regarding lack of competitive bidding on construction project). The trial court therefore properly dismissed the claim.

### Count VI — Violation of 42 U.S.C. 1983

{¶51} Appellants' Section 1983 claim was premised upon alleged conduct under Ohio's tax certificate statute that appellants contended violated the Takings, Equal

Protection, and Due Process Clauses of the Ohio and United States Constitutions.

{¶52} To state a claim under Section 1983, (1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges, or immunities secured by the laws or Constitution of the United States. *Rhoades v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 84439, 2005-Ohio-505, ¶ 16. Thus, appellants' attempt to base their Section 1983 claim on violations of the Ohio Constitution was insufficient to state a claim.

{¶53} Appellants conceded in their brief in opposition to Woods Cove's motion to dismiss that they cannot state a Section 1983 claim under provisions of Ohio law or the Ohio Constitution. They argued instead that they had successfully alleged violations of the United States Constitution so as to avoid dismissal. However, as discussed at length in this dissent, appellants' second amended complaint failed to state claims under the Takings, Due Process, and Equal Protection Clauses of the United States Constitution. Additionally, the second amended complaint did not allege that Woods Cove was a "state actor" for Section 1983 purposes. "The mere action by a private party pursuant to state statute is not enough to make the private party a 'state actor.'" *Cooper v. Commercial Sav. Bank*, S.D. Ohio No. 2:12-cv-0825, 2013-U.S. Dist LEXIS 174071, *10 (Dec. 12, 2013), citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Accordingly, the trial court properly dismissed this claim.

**Count VII — Consumer Sales Practices Act**

{¶54} Appellants' claim under the OCSPA fails because they did not establish they have standing to bring such a claim. In their second amended complaint, appellants claimed to have sustained damages due to allegedly unlawful "repayment contracts" entered into by Woods Cove and "taxpayers." Appellants failed to allege that they are party to any "repayment contract" with Woods Cove, nor did they attach a copy of any alleged contracts to their complaint, in violation of Civ.R. 10(D). Because they are not a party to any contract with Woods Cove, appellants cannot demonstrate they sustained any damages as a result of the repayment contracts, and thus, cannot sustain a claim for relief.

{¶55} Even more significantly, the OCSPA specifically exempts from its application "[a]n act or practice required or specifically permitted by or under federal law, or by or under other sections of the Revised Code." Here, the repayment contracts of which appellants complain are specifically permitted by statute. R.C. 5721.38(C)(2); R.C. 5727.30(F). Accordingly, the OCSPA is not applicable, and the trial court therefore properly dismissed this claim.

### Count VIII — Ohio's Civil Rights Act

{¶56} Appellants' OCRA claim is also based on the repayment contracts between Woods Cove and "taxpayers." The trial court properly dismissed this claim because not only did appellants fail to allege that they are parties to any repayment contract with Woods Cove, they also failed to establish that Woods Cove is a creditor for purposes of the Act.

**{¶57}** The OCRA prohibits "creditors" from discriminating "in the granting, withholding, extending, or renewing of credit, or in the fixing of the rates, terms, or conditions of any form of credit, on the basis of race." R.C. 4112.021(B)(1)(a). A "creditor" for purposes of the Act is one "who regularly extends, renews, or continues credit." R.C. 4112.021(A)(2). "Credit" is defined in the OCRA as "the right granted by a creditor to a person to defer the payment of a debt, to incur debt and defer its payment, or to purchase property or services and defer payment for the property or services." R.C. 4112.021(A)(1). However, "[p]ayment plans with respect to tax obligations do not involve the granting of a right to defer payment of 'debts,' but rather the granting of a right to defer payment of tax obligations, which are not 'debts.'" *Pollice v. Natl. Tax Funding, L.P.*, 225 F.3d 379, 410 (3d Cir. 2000). Simply stated, there is no personal "debt" incurred or deferred by a property owner who enters into a redemption payment plan. Accordingly, because Woods Cove is not extending credit to persons who enter into repayment contracts, it is not a "creditor" for purposes of the OCRA, and the trial court properly dismissed this claim.

### Count IX — Mandamus

**{¶58}** The trial court also properly dismissed appellants' mandamus claim. A writ of mandamus will issue only where the relator has shown (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the requested act, and (3) that relator has no plain and adequate remedy at law. *State ex rel. Plain Dealer Publishing Co. v. Barnes*, 38 Ohio St.3d 165, 167, 527 N.E.2d

807 (1988).

{¶59} If the allegations of a complaint for a writ of mandamus indicate that the true object sought is for a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed. *State ex rel. Grendell v. Davidson*, 86 Ohio St.3d 629, 634, 716 N.E.2d 704 (1999). To ascertain the true intent of the mandamus action, a court must examine the complaint to determine if it "actually seeks to prevent, rather than compel, official action." *State ex rel. Cunningham v. Amer Cunningham Co., L.P.A.*, 94 Ohio St.3d 323, 324, 762 N.E.2d 1012 (2002).

{¶60} Here, appellants sought a declaration that the tax certificate statute was unconstitutional, and asked the trial court to prevent the Treasurer from acting in accordance with it. This was not a claim in mandamus; it was a claim for declaratory judgment and prohibitory injunction disguised as a mandamus claim. *See, e.g., State ex rel. Kuhar v. Medina Cty. Bd. of Elections*, 108 Ohio St.3d 515, 2006-Ohio-1079, 844 N.E.2d 1179 (mandamus claim was actually a claim for declaratory judgment and prohibitory injunction where relator sought a declaration that H.B. 66 was unconstitutional and an order preventing the elections board from acting consistently with the statute); *State ex rel. Intl. Heat & Frost Insulators & Asbestos Workers Local #3 v. Court of Common Pleas*, 8th Dist. Cuyahoga No. 85116, 2006-Ohio-274, ¶ 22 (mandamus claim was actually a claim for declaratory judgment and prohibitory injunction where relators asked the court to declare Am.Sub.H.B. 292 unconstitutional

and prevent the court from acting in accordance with it).  Accordingly, the trial court properly dismissed this claim.

## Count X — Truth in Lending Act

{¶61} Appellants' TILA claim arises under 15 U.S.C. 1638, which requires certain disclosures by a "creditor" in connection with a "consumer credit transaction." Appellants' second amended complaint asserted that a "consumer credit transaction" was created for TILA purposes because Woods Cove purchased tax certificates from the Treasurer, and entered into repayment contracts with delinquent taxpayers.  As with their claims regarding alleged violations of the OCSPA and OCRA, appellants failed to allege that they are party to any repayment contract with Woods Cove, nor did they attach a copy of any alleged repayment contracts to the complaint, in violation of Civ.R. 10(D).  Accordingly, appellants failed to establish standing to bring a claim for relief under TILA.

{¶62} Moreover, case law and the Staff Commentary to the TILA's implementing regulations specifically hold that TILA does not apply to tax liens and payment plans deferring payment of a tax obligation.  TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."  15 U.S.C. 1602(e).  In *Pollice*, *supra*, 225 F.3d 379 (3d Cir. 2000), the Third Circuit specifically considered whether TILA applied to an entity that, like Woods Cove, had purchased delinquent claims and liens for unpaid taxes from a municipality.  The Third Circuit Court of Appeals specifically found that "the granting of a right to defer payment

of a tax obligation is not 'credit' for purposes of TILA," and that "payment plans do not constitute 'consumer credit transactions' with respect to the tax obligations." *Id.* at 410. Further, as discussed above, it held that "payment plans with respect to tax obligations do not involve the granting of a right to defer payment of 'debts,' but rather the granting of a right to defer payment of tax obligations, which are not 'debts.'" *Id.* In reaching this conclusion, the court cited the Staff Commentary to the TILA's implementing regulation, which specifically states that tax liens and tax assessments are not considered credit for TILA purposes. *Id.* Because the TILA is not applicable in this case, the trial court properly dismissed this claim.

## Class Action Allegations

{¶63} Because, as discussed above, all of appellants' claims fail, its class action claim also necessarily fails.

{¶64} Because all of appellants' claims fail, I would hold that the trial court properly granted appellees' motions to dismiss and dismissed appellants' second amended complaint, albeit for reasons other than set forth in the journal entry. Accordingly, I dissent.